IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

Michael McCole,
   Petitioner,

versus              : CA No. 04-261E

PA Board of Probation
and Parole,
   Respondents

## Proposed Amendment to Petition For Writ of Habeas Corpus

And Now Comes, pro-se Petitioner Michael McCole who respectfully avers that the proposed amendment will essentially contain the following.

1. Affirmative Statements made in applications filed by Pennsylvania in its six year participation in the Federal Department of Justice's Violent Offender Incarceration [1]/ Incentive Grant Program ("VOI") demonstrate a violation of Petitioner's rights secured him through the Due Process Clause of the United State's Fourteenth Amendment in that actions and omissions to act committed by Members of the PA Board of Probation and Parole unequivocally divested Petitioner of his due process right to have his parole applications

---

1/ The six years encompassed 1996 through 2001. The other half of this program was deemed "Truth-In-Sentencing" which under the terms of the criteria Pennsylvania opted to qualify for had no effect upon a prisoner's state sentence.

acted upon according to specifically articulated statutory standards codified in Section 19 of the Act of August 6, 1941 (Parole Act), P.L. 861 as amended, 61 P.S. Section 331.19.**2/**

2. Section 17 of the Parole Act, 61 P.S. Section 331.17, provides the parole board with the exclusive power to grant or deny parole to a prisoner.

3. When exercising this power, the Parole Board must consider various factors such as the nature and character of the offense committed, any recommendation by the trial judge and the District Attorney, the general character and history of the prisoner and testimony or statements by the victim and the victims' family. After weighing these factors, the Parole Board exercises its discretion to either grant or deny parole. 61 P.S. Section 331.21. Rogers v. PBPP 724 A.2d 319 (Pa. 1999)

4. Pursuant to 331.19, "It shall be the duty of the board, upon the commitment to prison of any person whom said board is herein given the power to parole to consider the nature and

---

**2/** Section 19 requires the Board to inform itself of a prisoner's criminal history, family background, adjustment while in prison, and a variety of other things pertaining to the prisoner prior to making the decision to grant or deny parole. Johnson v. PBPP, 532 A.2d 50 (Pa.Cmwlth. 1987) See Also Bandy v. PBPP, 530 A.2d 507 (Pa.Cmwlth. 1987)(61 P.S. Section 331.19 requires the Board to inform itself of a parolee's criminal record in determing whether to recommit him as a parole violator as well as when deciding whether to initially release him on parole). Additionally, the Board reviews five factors prior to making a parole release decision: (1) the extent of the risk to the community; (2) the nature of the prisoner's offense and his prior criminal history; (3) the prisoner's job potential and employment; (4) the prisoner's emotional and family stability; land (5) the prisoner's adjustment to prison." See also: Paragraphs 2, 3 and 4 herein.

-2-

circumstances of the offenses committed, any recommendations made by the trial judge and prosecuting attorney, the general character and background of the prisoner, participation by a prisoner who is serving a sentence for a crime of violence as defined in 42 Pa.C.S. Section 9714 (g) (omitted) and the written or personal statement of the testimony of the victim or the victim's family submitted pursuant to Section 221.1 of this act. The board shall further consider the notes of testimony of the sentencing hearing, if any, together with such additional information regarding the nature and circumstances of the offense committed for which sentence was imposed as may be available. The board shall further cause the conduct of the person while in prison and his physical, mental and behavior condition and history, his history of family violence and his complete criminal record, as far as the same may be know, to be reported and investigated."

5. It is unquestionable that Petitioner enjoyed "the right to be considered for parole"**3/** and that this right becomes applicable at the expiration of his or her minimum term **4/**.

6. The right to apply for parole upon the expiration of the minimum term also encompasses a concomitant right to have that application fairly considered by the Board. **5/**

---

**3/**  White v. PBPP, 833 A.2d 819 (Pa.Cmwlth. 2003)

**4/**  Krantz v. PBPP, 483 A.2d 1044 (Pa.Cmwlth. 1984)

**5/**  Jamieson v. PBPP, 495 A.2d 623 (Pa.Cmwlth. 1985)

-3-

7. Although the Board has broad discretion in making parole decisions, the Board has a corresponding duty to consider and to act upon parole applications according to specifically articulated statutory standards.**6/**

8. The Board's denial of parole applications based upon an "achieving the fair administration of justice" concept does not meet the requirements of due process.**6/**

9. Petitioner was denied parole on May 27, 1999, given a three year set-back until his next parole review and was told the reasons were "mandates to protect the safety of the public and to assist in the fair administration of justice."**7/**

10. Petitioner was denied parole again on July 16, 2002, given a one year set-back until his next parole review and was told the reason was "fair administration of justice."**7/**

11. Unbeknownst to Petitioner at the time, Pennsylvania had entered into a six year Federal Department of Justice Grant Program that provided states grant funding to incarcerate more violent offenders and to make violent offenders serve more time on the sentence imposed.

12. The Federal Grant Program (Violent Offender Incarceration/Truth-In-Sentencing ("VOI/TIS")) served to cause the PA Parole Board to abandon its corresponding duty to consider and to act upon violent offender parole applications according to specifically articulated statutory standards.

---

**6/** Voss v. PBPP, 788 A.2d 1107 (Pa.Cmwlth. 2001)

**7/** The corresponding documents will be attached as exhibits to the Amendment.

-4-

13. Petitioner, in accordance with VOI Tiers I, II and III grant criteria, was being denied parole because he was a violent offender.

14. Likewise, the parole denials were being compelled through promises to the federal government that violent offenders would be forced to serve a substantial portion of the sentence imposed shown through documentation that increases were occuring to the average percent of sentence served. **8/**

15. Each yearly VOI application from 1996 through fiscal year 2001 included statutory assurances that violent offenders would fall under correctional policies and programs ensuring that they serve a substantial portion of the sentence imposed that are designed to provide sufficiently severe punishment for a period of time deemed necessary to protect the public.

16. In 1996, a Tier 1 statutory assurance stated that new harsher sentencing guidelines were being legislated for the purpose of increasing the severity of sentences of violent offenders

17. In this same document, it was then acknowedged that the new sentence guidelines were certain to raise the already considerable prison time served by future violent offenders by lengthening the minimum sentence.

18. It was then stated in this same document that although violent offenders already in prison are not subject to these

---

**8/** All reference VOI documentation will be appened to the Amendment.

new sentencing policies, since parole at minimum is discretionary, parole policies can effect the time served in prison for these offenders.

19. In this same document, it was averred that already the number of violent prisoners released from prison in 1995 was less than half of the number released in 1994 and time served increased by six months.

20. This increase was promised, "will most likely continue to increase.

21. A 1996 Truth-In-Sentencing Eligibility statement vouched that while the expiration of the minimum sentence establishes parole eligibility, parole is discretionary, and "under current policy, unlikely to be granted at minimum for <u>violent</u> offenders." (Emphasis in original)

22. This same document stated that the new harsher sentencing guidelines will be relied on heavily to guide parole release decisions and if the Board disagreed with the Court's sentence, it could consider that an unfavorable factor in the release decision.

23. 1997's VOI application contained essentially similar promises as the 1996 VOI application along with facts showing that PA was holding up its end of the grant criteria.

24. In 1997 Statutory Assurances and Truth-In-Sentencing Eligibility statments it was shown that already in PA there was a 35% decrease in yearly parole grants and violent offenders on average were being compelled to serve 125.5% of their minimum sentence.

-6-

25.  Parole grants for violent offenders had again been reduced to half of those granted in previous years and another projection was made that the percent of minimum sentence served was very likely to increase.

26.  The 1998 VOI application contained similar statments and promises to uphold VOI and TIS grant criteria.

27.  An incarceration strategy relating to violent offenders was held out as why money was required to build more cell space.

28.  The 1998 Attachment to Statutory Assurance noted the enactment of the harsher 1997 presumptive sentencing guidelines and stated that violent offenders now serving time were unable to be essentially resentenced but again, parole policies "can effect the time served in prison for these offenders."

29.  Another promise was made that violent offenders were unlikely to make parole at the expiration of their minimum sentence.

30.  Another chart showed that in 1997 violent offenders on average were serving 144.3% of their minimum sentence. On a five to ten or ten to twenty year sentence 144.3% of the minimum was equivalent to about 74% of the maximum sentence.

31.  The 1999 and 2000 VOI application made similar promises and statements contained in past applications.

32.    More charts were adduced to show average percentages of time served on sentence:

| 1997 | 1998 | 1999 | 2000 |
|------|------|------|------|
| 144.3% | 129.3% | 141.1% | 139.6% |

33.    Petitioner was unable even with reasonable diligence to discover the underlying facts of PA's participation in the VOI program.

34.    The fatual predicate for the due process claim could not have been discovered previously through the exercise of due dilligence.

35.    Respondents have consistently made judicial declarations (Acting Chairman Martinez, Castor) that the Board never deviate from its statutory considerations for parole as set forth above at paragraphs 3, 4 an 5.

36.    Court decisions consistently held that Pennsylvania's participation in the VOI/TIS program had no affect on a violent offender parole eligibility at the expiration of the minimum sentence. Commonwealth v. Baldwin, 760 A.2d 883 (Pa.Super. 2000)

37.    Another decision in 2004 still held that the VOI/TIS applications had no affect on an offender's parole eligibility at the expiration of the minimum sentence. Commonwealth v. Boyer, 856 A.2d 149 (Pa.Super. 2004)

Case 1:04-cv-00261-SJM-SPB     Document 15     Filed 07/28/2005     Page 9 of 10

38. In 1999, a PA federal district court decision was rendered to the effect that: "The Commonwealth's regime of parole eligibility at the completion of prisoners' minimum sentences remains unaffected by the 1996 federal grant act. Carter v. Muller, 45 F.Supp. 453 (E.D.Pa. 1999)

39. Petitioner had no reason to disbelieve the various court decisions involved with the grant act9/ that were supported by consistent averments from Respondents that the statutory considerations for parole have always been those things calculated in parole making decisions.

40. Along with Pennsylvania crafting its parole policies to conform to VOI grant prerequisites was the creation of other policies to meet grant criteria: Victim Bill of Rights, Harsher Punishment for Violent Offenders, an on-going list of death of Life Sentence prisoners, drug detection program for state inmates with progressive punishment for positive urinalysis results, no life sentenced prisoners being extended commutation (albeit VOI/TIS allowed the state to release a very small number of Lifers) and among others, no "good" nor "earned" time to reduce an inmates minimum sentence.

---

9/ Based on the evidentiary facts, PA's participation in the VOI/TIS program affected a violent offender's parole eligibility. A careful review of all of the court decisions show that no litigation ever surrounded the VOI aspect of the grant program. All of the cases dealt with Truth-In-Sentencing grant criteria (85% of presumptive guideline minimum sentence) which had no affect on prisoners since all state inmates are required to serve 100% of their minimum sentence.

41.   Prior to the VOI/TIS grant program, violent offenders in Pennsylvania made parole at the expiration of their minimum sentence more often than non-violent offenders.

42.   It's fairly certain that in the absence of the interferring VOI/TIS criteria, Petitioner would have been granted parole under the pre-1996 paroling standards, philosophies and guidelines.

43.   Pennsylvania's participation in the VOI/TIS program stripped Petitioner of his due process rights to have his parole applications fairly considered and decided by statutory considerations set forth in 61 Section 331.19.

44.   The VOI/TIS program compelled the Respondents to decide Petitioner's parole applications with standards and considerations that fell outside of 61 Section 331.19.

45.   VOI/TIS criteria demanded that Petitioner as a violent offender serve an increasing percentage of his prison sentence in order to advance public safety interests. This criteria negated Respondents from deciding whether under the lawful paroling criteria a parole grant or denial was warranted.

46.   As shown Respondents in two parole denials simply stated public safety and the fair administration of justice were the reasons to support its decision.

Respectfully submitted,

*Michael McCole*
Michael McCole

-10-