IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MICHAEL McCOLE,                )
                               )
         Petitioner            )
                               )
     vs.                       )    Civil Action Number
                               )
                               )         04-261 Erie
PA Board of Probation &        )
Parole,                        )

### TRAVERSE TO RESPONDENT'S ANSWER TO PETITION
### FOR WRIT OF HABEAS CORPUS

AND NOW, comes the pro-se Petitioner Michael McCole and hereby files the following Traverse demonstrating that Respondent's Answer to the writ of habeas corpus should be overruled and the writ forthwith granted.

1. Admitted in part. Petitioner has amended his writ of habeas corpus to include a due process issue. The new claim is based upon the Respondent's participation and the role played in the 1996--2001 Violent Offender Incarceration/ Truth-In-Sentencing Incentive Grant Program ("VOI/TIS").

2. Admitted in part. From 1996 through 2001, Pennsylvania qualified and did receive federal grant money for meeting the terms specified in VOI/TIS grant criteria, VOI Tiers I, II and III, and TIS. This was accomplished by Respondents simply denying violent offender parole applications without reviewing those applications with authorized statutory considerations codified at Purdon's Title 61 Section 331.19.

1

3. Admitted in part. Petitioner is alleging that he was denied parole during those years simply on the basis of his underlying violent crime and not on the criteria mandated to be considered by statute. As shown later, Pennsylvania did more than provide "assurances". For instance, by 1997, violent offenders were being compelled to serve on average, 74% of their maximum sentence prior to paroling. This was due to VOI Tiers I, II and III grant criteria.

4. Denied. Petitioner's claim is not untimely, is not moot, and his claim is full of merit.

5. Denied in part. The VOI/TIS documentation was inadvertently omitted but is fully appended hereto and represents the following.

PA Applications for **1996** (Appendix ("App.") Pages 1 - 13; **1997** (App. Pages 14 - 28), **1998** (App. Pages 29 - 42); **1999** (App. Pages 43 - 55) **2000** (App. Pages 56 - 71) **2001** (App. Pages 72 - 82).

6. (A) through (D). Admitted insofar as the language referred to is contained within the AEDPA of 1996.

7. Denied. Respondent assert that the one year time period should begin to run by "no later than the end of 2001". Respondent's Answer omits to explain how it has deduced this time-frame except a reference to Petitioner's general statement that the grant program ran from 1996 through 2001.

Petitioner is presenting his claim well within the one year time period as established by 28 U.S.C. Section 2244 (d)

(1). The statute provides that, <u>inter alia,</u> the one year time limit begins to run on "(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Petitioner only learned of the underlying factual predicate in January of 2005. <u>See</u> attached Affidavit at Appendix Page 85. Indeed, the factual predicate could not have been discovered earlier even with due diligence because Respondent consistently denied that Pennsylvania's participation in the VOI/TIS had any adverse affect on state prisoners applying for parole. <u>See</u>, Ex-Board Chairman Martinez' Affidavit, attached hereto at Appendix Page 86. Therein, Chairman Martinez swears that during his twenty years with the Board (App. 87) it has always utilized "all of the factors" and "only" those factors set out in Section 19 of the Probation and Parole law in making determinations (App. 87, 89) and that "The Board has not changed its parole criteria, standards or policy at any time during this period." (App. 96). When this is coupled with judicial court rulings on the VOI/TIS to the effect that Pennsylvania's participation in the grant program had no adverse impact on a state prisoner's term of imprisonment <u>1/</u>, no one would reasonably disbelieve both the Board's assertions and the Court's factual rulings or have cause to diligently seek to disprove the matter. As shown in the affidavit attached hereto, the factual predicate

---

<u>1/</u>  <u>Carter v. Muller</u>, 45 F.Supp. 2d 453 (E.D.Pa. 1999); <u>Commonwealth v. Boyer</u>, 856 A.2d 149 (Pa.Super. 2004); <u>Commonwealth v. Baldwin</u>, 760 A.2d 883 (Pa.Super. 2000)

3

to the claim was accidentally discovered when Petitioner's legal assistant was obtaining VOI/TIS documents for the purpose of researching the program for an article. The article was in fact written and published in The Spotlight and in a common prisoner publication called "Graterfriends".**2/**

As a result of the totality of the above, Petitioner's claim is not time-barred.

8.   Denied. Petitioner's Claim is not moot. Respondent points to two subsequent parole reviews that Petitioner received in 2002 and 2003, a year after the close of the VOI/TIS program as an unexplained reason to support its argument. Ironically, both of these parole reviews are being challenged in the habeas corpus petition as unconstitutional (ex post facto) so the Respondent's underlying suggestion that the unconstitutional parole reviews (due process grounds) preceding 2002 were somehow cured by subsequent unconstitutional parole reviews is without merit. The 2002 and 2003 parole reviews unquestionably violate the Third Circuit Court's ruling in Mickens-Thomas v. Vaughn, 321 F.3d 374 (3rd. Cir. 2003).

---

**2/**  After researching the VOI/TIS documents, it becomes apparent why the Court decisions erred in ruling that the VOI/TIS had no adverse influence on prisoner parole applications. The grant program had 5 different and distinct grant opportunities, VOI Tiers I, II and III, and 2 TIS criteria. A close reading of the Court rulings show that only the 2 TIS grant criteria were being considered with no mention of the VOI Tiers I, II and III which Pennsylvania also applied for and met each year. If experienced lawyers and judges were unable to cut to the entire factual underpinnings of the complicated VOI/TIS, by stronger reasoning, a layman such as Petitioner would ordinarily not be expected to do much more but pay heed to the court rulings.

9. Denied. Respondents misapprehend the cases cited. <u>Muller</u>, <u>Boyer</u>, <u>Carter</u> and <u>Baldwin</u>, only ruled that the state's participation in the "Truth-In-Sentencing" aspect of the VOI/TIS program did not arise to a claim of constitutional violation. The Courts never entertained and thus did not reach the question as to whether the Violent Offender Incarceration, Tiers I, II and III aspect of the VOI/TIS violated any portion of the Constitution. Ironically, this additionally supports Petitioner's position that even with due diligence he would not have been able to discover the factual predicate of his due process claim. Here, a Senior Deputy Attorney General was unable to discover after presumably researching the matter that the VOI/TIS program involved a variety of distinct criteria for receiving grant money <u>3/</u> and that Pennsylvania applied for every grant opportunity including VOI Tiers I, II and III.

Petitioner's due process claim is founded on well-established Third Circuit Court of Appeal's precedent to the effect that "once a state institutes a parole system, all prisoners have a liberty interest flowing directly from the due process clause in not being denied parole for arbitrary or constitutionally impermissible reasons." <u>Block v. Porter,</u>

---

<u>3/</u> PA's participation in the TIS aspect of the VOI/TIS program did not violate the constitution because PA opted to meet the first of two different criteria that prisoners will be required to serve 85% of their **minimum** sentence established pursuant to presumptive sentencing guidelines. Since PA state prisoners always serve 100% of their minimum, PA easily qualified for a TIS grant each year.

631 F.2d 233, 236 (3rd Cir. 1980), followed, Johnson v. Paparozzi, 219 F.Supp. 2d 635 (D.N.J. 2002); Bonsall v. Gillis, 2005 WL 1363472 (M.D.Pa. 2005). Therefore, Petitioner has a substantive due process right in being treated fairly during the parole process. See Jubilee v. Horn, 975 F.Sup. 761-764-765 (E.D.Pa. 1997), aff'd, 151 F.3d 1025 (3rd Cir. 1998). The Courts of Pennsylvania have also ruled that a prisoner has a right to apply for parole at the expiration of his or her minimum term and have that application fairly considered by the Board. Jamieson v. PBPP, 495 A.2d 623 (Pa.Cmwlth. 1985); Krantz v. PBPP, 483 A.2d 1044 (Pa. Cmwlth. 1984). The "fair consideration" in Pennsylvania is governed by express statutes.

The due process right claimed to have been run afoul in this case is, Respondent is mandated by statute and common law decisions to review parole applications with very specific paroling criteria which was set aside from 1996 (possibly even as early as 1995 **4/**) through 2001 in order to meet VOI Tiers I, II and III grant criteria explained more fully below.

The matter is clear that in Pennsylvania the Parole Board has the singular authority and discretion in determining if and when a prisoner under its jurisdiction should be released

---

**4/** Governor Ridge's Proclamation dated January 23, 1995, (Appendix Page 98) set forth specific subjects for legislation that ironically mirrors nearly all of the VOI/TIS grant criteria, suggesting that it's probable that Pennsylvania had received advanced notice of the coming federal grant program and scrambled to begin to meet the grant criteria. Number 5 was a VOI prerequisite: improving public safety by imprisoning dangerous offenders for longer prison terms.

on parole. <u>Johnson v. PBPP</u>, 532 A.2d 50 (Pa.Cmwlth. 1987) Respondent is required however to review parole applications with specific criteria codified by statute, Pa. Stat. Ann. tit. 61 Section 331.19 (West 1999). A list of these considerations were highlighted in Respondent's affidavit attached hereto (App. 87, 93-94. The cases also illustrate the importance of the "Section 19" factors: "Once the Board performs its statutory duties under 61 P.S. Section 331.19", <u>Johnson, supra.</u>; "the Board must consider various factors" <u>Rogers v. PBPP</u>, 724 A.2d 319 (Pa. 1999), "corresponding duty to act upon parole applications according to specifically articulated statutory standards." <u>Voss v. PBPP</u>, 788 A.2d 1107 (Pa. Cmwlth 2001).

After reading the VOI/TIS applications attached as exhibits, little doubt remains that Respondent's role in the scheme to help meet the VOI Tiers I, II and III grant criteria necessarily meant and actually accomplished a substantive abandonment of the statutory Section 19 paroling criteria. For the sake of advancing VOI/TIS prerequisites, parole applications were being denied simply because the applicant was a violent offender and not because a fair consideration of Section 19 factors warranted a denial of parole. This set of facts constituted a violation of the Due Process Clause.[5]

---

[5] This Court may entertain this claim despite it having not been first exhausted through the state courts. See, <u>Defoy v. McCollough</u>, 393 F.3d 439 (3rd. Cir. 2005)(constitutional violations in the denial of parole in Pennsylvania need not be presented to the state courts via a petition for writ of mandamus in order to satisfy the requirement of exhaustion.").

The VOI/TIS incentive grant program was for the singular purpose of providing funding to the States to build more prison space to house more violent prisoners for longer periods of time. The underlying theory was, with more violent prisoners in prison, the safety of the public would be enhanced through the subsequent decrease in the pool of available violent offenders in society. The subject VOI Tier I, criteria had a devestating impact on violent offenders in Pennsylvania. Initially, at appendix page 83, a graph shows that between fiscal years 1995 and 2001 there was a historic drop in overall yearly parole grants and the denial of parole applications numbered over 50,000, an unmatched phenomenon in Pennsylvania's then 55 year old Parole Act. Astoundingly, as shown below, the drafters of the Applications acknowledged that the new parole policies were affecting prisoners already in prison convicted and serving their sentence.

Turning to the VOI/TIS Applications themselves, grant funding was consistently requested for "bed space for the confinement of violent offenders" that "serve to accommodate Pennsylvania's incarceration strategy relating to violent offender populations." (**1996** 2; **1997** 15; **1998** 31-32; **1999** 45; **2000** 62) (Bold numbers indicate date of VOI/TIS application and following number refers to Appendix page.).

Each year Pennsylvania asked for and received grant funding pursuant to VOI Tier 1 criteria that mandated per statutory assurances: that the state will implement correctional policies

8

and programs designed to assure that violent offenders would serve a substantial portion of the sentences imposed, that prison time served would be related to a determination that the inmate is a violent offender and time served would be for a period deemed necessary to protect the public.**6/** (**1996** 5; **1997** 16; **1998** 33; **1999** 47; **2000** 76)

Attachments to the Statutory Tier I Assurances were rendered each year (**1996** 6; **1997** 17; **1998** 34; **1999** 48; ) to demonstrate that Pennsylvania was making good on its Tier I Statutory promises. New sentencing guidelines were enacted to "increase the severity of sentences of violent offenders" by "lengthening the minimum sentence"**7/** (**1996** 6-7; **1997** 18; **1998** 34-35; **1999** 48;). Violent offenders already serving time were deemed not subject to the new sentencing policies however, since parole at minimum is discretionary, it was stated that "parole policies can affect the time served in prison for these offenders." (**1996** 7; **1997** 18; **1998** 35; **1999** 49).

"These offenders" had their total number of yearly parole grants cut in half by fiscal year 1995. (**1996** Chart at 9. By 1997, a 35% decrease in parole grants for violent offenders

---

**6/** Around this time frame the Board's written notices announcing parole denials only had "public safety" listed as the singular explicatory reason. See, Habeas Corpus Exhibit 1.

**7/** in 1997 another revision of sentencing guidelines took effect in June in order to increase the severity of sentences of violent offenders (Appendix 34-35).

9

transpired (App. 18; 35) and already in 1996 time served increased by six months. The increase in time served and promise of a greater future increase (**1996** 7,9; **1998** 35) was a VOI Tier II and III criteria created through "new parole policies" (**1996** 7; **1997** 18; **1998** 35) that were designed for violent offenders (**1996** 12; **1997** 27; **1998** 43; **1999** 56; **2000** 72). The policy revisions were deemed part of "a major overhaul of Board policy" (**1996** 12; **1997** 27; **1998**, 43; **1999** 56; **2000** 72).

Truth-In-Sentencing Eligibility Statements accompanied each Application and stated: Parole is discretionary, "and under current policy, unkikely to be granted at minimum for violent offenders." (**1996** 11; **1997** 26; **1998** 42; **1999** 55; **2000** 71). Presumptive sentencing guidelines would "not only set the minimum release date which controls when the Board may consider an offender for parole, but are also used in release consideration." Respondent would reject a judge's sentence if it was less than the presumptive sentence range (**1996** 11; **1997** 26-27; **1998** 42; **1999** 55; **2000** 71). Official decision making guidelines would "rely heavily" on sentencing guidelines to further guide decisions to establish a release date. (**1996** 12; **1997** 27; **1998** 43; **1999** 55).

Charts were provided each year to show that Pennsylvania was increasing the average time served on minimum sentence (**1996** Chart 12; **1997** Chart 27; **1998** Chart 43; **1999** Chart 56; **2000** Chart 72).

10

Average Percent of Minimum Sentence Served For
Violent Offenders Released from PA DOC 1994-2000

| 1994 | 1995 | 1996 | 1997 | 1998 | 1999 | 2000 |
|------|------|------|------|------|------|------|
| 122.7 | 130.4 | 125.5 | 144.3 | 129.3 | 141.1 | 139.6 |

The Court may take judicial notice that 144.3 percent of minimum (1997) on a 5 to 10 or 10 to 20 is equivalent to 74.3% of the **maximum** sentence.

10. Denied. It is not surprising that Respondent failed to apprise parole applicants that the VOI/TIS criteria has taken the place of the legitimate Section 19 factors. In MickensThomas v. Vaughn, 355 F.3d 294 (3rd Cir. 2004), the Court ordered the inmate litigant released onto parole noting that Respondent had engaged in activity that sought to conceal constitutional violations. Moreover, again, the two parole applications referred to by Respondent are alleged to have been reviewed with constitutionally impermissible ex post facto standards relative to a 1996 Parole Act Amendment.

11. Denied. Petitioner's claims are factually accurate, indisputable and would rise to the level to satisfy "shocks the conscience" standard that governs review of substantive due process claims. Petitioner does not believe that he must satisfy such a standard as suggested by Respondent. However, to go from a paroling system that generally paroled both violent and non-violent offenders at the expiration of their minimum sentence on the basis of statutory considerations to a system

11

that shut down fair parole eligibility for violent offenders for the sake of funding does shock the conscience especially because parole applicants (over 50,000 denied parole applications) were being compelled to serve more time in prison without due process protection.

　　　　WHEREFORE, it is respectfully requested that the petition for writ of habeas corpus be granted.

　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　*Michael McGh*　　9/15/05
　　　　　　　　　　　　　Michael McCole
　　　　　　　　　　　　　SCI Frackville
　　　　　　　　　　　　　1111 Altamont Blvd.
　　　　　　　　　　　　　Frackville, PA  17931

IN THE UNITED STATES DISTRIT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MICHAEL McCOLE,** | ) |
| Petitioner | ) |
| vs. | ) Civil Action Number |
| | ) |
| | ) 04-261 Erie |
| **PA Board of Probation & Parole,** | ) |

### CERTIFICATE OF SERVICE

I the undersigned hereby certify that a true and correct copy of the forgoing Traverse with Appendiced Exhibits was served upon the below named individual and in the manner indicated below:

<u>SERVICE BY FIRST CLASS PRE-PAID U.S. POSTAGE ADDRESSED TO:</u>

Rodney M. Torbic
Senior Deputy Attorney General
Office of Attorney General
6th Floor, Manor Complex
564 Forbes Avenue
Pittsburgh, PA  15219

*Michael McCole* (signature)
Michael McCole
SCI Frackville

September 15th, 2005