OMB Approval No. 0348-0043

# APPLICATION FOR FEDERAL ASSISTANCE

| 2. DATE SUBMITTED 8/14/96 | Applicant Identifier |
|---|---|

| 1. TYPE OF SUBMISSION: | | |
|---|---|---|
| **Application** | **Preapplication** | **3. DATE RECEIVED BY STATE** State Application Identifier |
| [X] Construction | [ ] Construction | |
| [ ] Non-Construction | [ ] Non-Construction | **4. DATE RECEIVED BY FEDERAL AGENCY** Federal Identifier |

**5. APPLICANT INFORMATION**

Legal Name: **Pennsylvania Commission on Crime and Delinquency**

Organizational Unit:

Address (give city, county, state, and zip code):
**P.O. Box 1167**
**Harrisburg, PA  17108-1167**
**Dauphin County**

Name and telephone number of the person to be contacted on matters involving this application (give area code)
**Richard D. Reeser**
**(717) 787-8559**

**6. EMPLOYER IDENTIFICATION NUMBER (EIN):**

[redacted]

**7. TYPE OF APPLICANT:** (enter appropriate letter in box) [A]

A. State
B. County
C. Municipal
D. Township
E. Interstate
F. Intermunicipal
G. Special District

H. Independent School Dist.
I. State Controlled Institution of Higher Learning
J. Private University
K. Indian Tribe
L. Individual
M. Profit Organization
N. Other (Specify): _____

**8. TYPE OF APPLICATION:**

[X] New    [ ] Continuation    [ ] Revision

If Revision, enter appropriate letter(s) in box(es): [ ]  [ ]

A. Increase Award    B. Decrease Award    C. Increase Duration
D. Decrease Duration    Other (specify):

**9. NAME OF FEDERAL AGENCY:**

**Office of Justice Programs**

**10. CATALOG OF FEDERAL DOMESTIC ASSISTANCE NUMBER:** | 1 | 6 | . | 5 | 8 | 6 |

TITLE: **Violent Offender Incarceration and Truth-In-Sentencing Incentive Grants**

**11. DESCRIPTIVE TITLE OF APPLICANT'S PROJECT:**

1) **Violent Offender Incarceration and Truth-In-Sentencing Grants**
2) **Department of Agriculture**
3) **July 1 to June 30**

**12. AREAS AFFECTED BY PROJECT** (cities, counties, states, etc.):

**Statewide**

**13. PROPOSED PROJECT:**

| Start Date | Ending Date |
|---|---|
| 10/1/96 | 9/30/2000 |

**14. CONGRESSIONAL DISTRICTS OF:**

| a. Applicant | b. Project |
|---|---|
| All | All |

**15. ESTIMATED FUNDING:**

| | | |
|---|---|---|
| a. Federal | $ | .00 |
| b. Applicant | $ | .00 |
| c. State | $ | .00 |
| d. Local | $ | .00 |
| e. Other | $ | .00 |
| f. Program Income | $ | .00 |
| g. TOTAL | $ | .00 |

**16. IS APPLICATION SUBJECT TO REVIEW BY STATE EXECUTIVE ORDER 12372 PROCESS?**

a. YES. THIS PREAPPLICATION/APPLICATION WAS MADE AVAILABLE TO THE STATE EXECUTIVE ORDER 12372 PROCESS FOR REVIEW ON:

DATE _____

b. NO. [X] PROGRAM IS NOT COVERED BY E.O. 12372

[ ] OR PROGRAM HAS NOT BEEN SELECTED BY STATE FOR REVIEW

**17. IS THE APPLICANT DELINQUENT ON ANY FEDERAL DEBT?**

[ ] Yes    If "Yes," attach an explanation.    [X] No

**18. TO THE BEST OF MY KNOWLEDGE AND BELIEF, ALL DATA IN THIS APPLICATION/PREAPPLICATION ARE TRUE AND CORRECT, THE DOCUMENT HAS BEEN DULY AUTHORIZED BY THE GOVERNING BODY OF THE APPLICANT AND THE APPLICANT WILL COMPLY WITH THE ATTACHED ASSURANCES IF THE ASSISTANCE IS AWARDED**

a. Typed Name of Authorized Representative
**Richard D. Reeser**

b. Title **Director, Bureau of Program Development**

c. Telephone number **(717) 787-8559**

d. Signature of Authorized Representative
*[signature]*  APP. 1

e. Date Signed **8-14-96**

Previous Editions Not Usable

Standard Form 424    (REV 4-88)
Prescribed by OMB Circular A-102

**Planned Use of Grant Funds**

On July 31, 1996, Pennsylvania's Department of Corrections (DOC) had a population of 34,121 inmates with a capacity of 22,069. The number of inmates in excess of capacity was 12,052. Therefore, the DOC was operating at 154% of capacity.

Contingent upon the level of available grant funds, the Commonwealth of Pennsylvania intends to increase DOC capacity by implementing one or more of the following projects:

**SCI-Rockview**

This project consists of the construction of a 27,000 square foot housing unit with four dormitories, fifty double rooms, offices, toilet rooms, multi-purpose rooms, laundry and storage areas. It will also include improvements to the kitchen and dining areas to provide an additional 3,000 square feet of food prepararation area. Necessary improvements to perimeter security including a perimeter intrusion detection system (P.I.D.S.) are also part of the project. The anticipated net increase in available bed space for the confinement of violent offenders is 150.

**SCI-Graterford & SRCF Mercer**

Both projects consist of the construction of 27,000 square foot housing units with four dormitories, fifty double rooms, offices, toilet rooms, multi-purpose rooms, laundry and storage areas. For both projects, the anticipated net increase in available bed space for the confinement of violent offenders is 300.

**SCI-Indiana**

Construction of an additional 250 cells at this proposed facility for habitual/violent juvenile offenders.

**SCI-Forest**

Construction of proposed 1000 cell facility in Forest County, Pennsylvania.

2    APP. 2

## Program Administration

The Pennsylvania Commission on Crime and Delinquency (PCCD) was created by Act 1978-274 to undertake statewide responsibility for criminal and juvenile justice planning, coordination and policy analysis. In this capacity, PCCD functions as the central source for planning, statistical analysis, and program development for the improvement of the Commonwealth's criminal justice system and provides data analysis research and legislative recommendations to the Governor's Office and the General Assembly.

The PCCD administers a number of federal funding streams including the Byrne Formula Grant Program; the Juvenile Justice and Delinquency Prevention Act Formula Grant, Title V, and Challenge Grant programs; the Victims of Crime Act (VOCA) program; the STOP Violence Against Women Program; the Residential Substance Abuse Treatment Program, and the Local Law Enforcement Block Grant Program.

Grant funds under the Violent Offender Incarceration/Truth-in-Sentencing Program will be subject to similar requirements to the federal programs listed above. PCCD will certify and ensure that there is proper accounting, review, disbursal, and monitoring of these funds. As indicated above, PCCD has a wealth of experience in administering these programs and has built a strong reputation for the responsible management of all funding sources under its charge.

As indicated in the narrative describing the planned use of grant funds, it is anticipated that funds will be subgranted to the Department of Corrections for the purpose of increasing capacity.

## Use of Administrative Funds

At this time, PCCD does not intend to utilize funds from the grant for administrative purposes.



**COMMONWEALTH OF PENNSYLVANIA**
**Department of Corrections**

*Certification Regarding*
*Ability to Support, Operate, and Maintain Correctional Facilities*
*Constructed with Grant Funds*

This certification is required under the Truth-in-Sentencing Incentive Grants Application Kit (pg. 7) for the Violent Crime Control and Law Enforcement Assistance Act of 1994 as amended by the FY 1996 Appropriations Act.

The Commonwealth certifies that any monies received under the Truth-in-Sentencing Incentive Grant program will be used to build and/or expand capacity within Pennsylvania's state prison system.

Furthermore, the Commonwealth certifies that, through the Pennsylvania Department of Corrections, it is capable of operating, maintaining, and supporting grant funded correctional facilities. The Commonwealth agrees to comply with the requirement that, once completed, Commonwealth funds will be used to provide for the ongoing support, operation and maintenance of these facilities/beds. The Commonwealth's ability to maintain, support, and operate facilities and/or capacity funded under federal grant monies is evidenced by the operation of previously funded facilities/beds at the state boot camp at Quehanna (see grant reference below) as well as fifty bed drug and alcohol therapeutic communities established at State Correctional Institutions at Graterford (87/88-NC-03/06/2899), Cresson (89-NC-11-3135), and Muncy (90-DS-11-3532).

| Facility/Unit | Grant # | Grant Start | Grant End | Federal Share | State Share |
|---|---|---|---|---|---|
| Quehanna Boot Camp | 90-DS-11-3613 | 2/18/91 | 8/31/92 | $1,210,976 | $497,168 |
| Quehanna Boot Camp | 92-DS-11-4134 | 9/1/92 | 3/30/94 | $1,098,000 | $1,098,000 |
| Quehanna Boot Camp | 93-DS-11-4611 | 1/1/94 | 12/31/94 | $549,000 | $3,376,000 |

Tom Ridge, Governor
*Name and title of Authorized Representative*

*Signature*                                        8/13/96
                                                   *Date*

Commonwealth of Pennsylvania
*Name of Organization*

Room 225 Main Capitol, Harrisburg, PA  17120
*Address of Organization*

*APP. 4*

# Statutory Assurance

# Violent Offender Incarceration Program--Tier 1

The State/Territory of ___Pennsylvania___ assures that it has implemented, or will implement, correctional policies and programs, including Truth-in-Sentencing laws that ensure that violent offenders serve a substantial portion of the sentences imposed, that are designed to provide sufficiently severe punishment for violent offenders, including violent juvenile offenders, and that the prison time served is appropriately related to the determination that the inmate is a violent offender and for a period of time deemed necessary to protect the public.

___Richard D. Reeser___
**Certifying Official**

___Director, Bureau of Program Development___
**Title**

**Signature**

___8-14-96___
**Date**

*APP. 5*

### Attachment to Statutory Assurance--Violent Offender Incarceration Program--Tier 1

Unlike many other states, Pennsylvania has long established sentencing and parole policies which embrace the principle of truth in sentencing. Summary information concerning Pennsylvania's sentencing statutes is provided in appendix B of this application.

Under Pennsylvania law, any offender who is sentenced to a maximum sentence of two years or more is not eligible for parole until he has completed serving his minimum term. This two year or greater maximum sentence threshold must be met in order for an offender to be sentenced to state prison. Though the Pennsylvania Department of Corrections is authorized to accept some offenders with maximum sentences of less than two years, only 21 of the 6,073 court commitments to state prison in 1995, were sentenced to a maximum of under two years.

The "truth" in Pennsylvania's sentencing structure is that the earliest possible parole date for an offender is established in the court and proclaimed in that public forum. Minimum terms are established either by the use of presumptive sentencing guidelines or through the imposition of mandatory sentences. Pennsylvania's oldest mandatory sentences, for first or second degree murder exemplify this principle. Pennsylvania is one of very few states where the mandatory minimum sentence for each of those offenses, life imprisonment, actually means life imprisonment. The only relief from these life sentences are either an appeal overturning the conviction or a commutation by the Governor. In the last ten years, only 23 lifers have been released from prison by commutation, during that same period 114 died in prison and the Department of Corrections is currently incarcerating more than 3,000 lifers. Other mandatories for violent offenses in Pennsylvania include at least a five year mandatory minimum sentence for any "crime of violence" which is a subsequent violent offense or was committed with a firearm. Pennsylvania's "crime of violence" is a broader definition than the part 1 violent crime definition, most notably, "crime of violence" includes burglary of an occupied residence. In 1995, the Pennsylvania General Assembly held a special session on crime. One of the laws enacted in that session, Act 1995-21, increased the severity of these mandatory sentences under certain circumstances and enabled judges to impose life sentences for third time offenders (Appendix C). This special session also enacted a law, Act 1995-33, that requires that violent juvenile offenders who were previously adjudicated delinquent for a violent crime or who used a deadly weapon in the commission of the current offense be charged in adult court and subject to the same sanctions applicable to adult offenders (Appendix D).

Those violent offenders who are not subject to mandatory sentences in Pennsylvania, are sentenced under our presumptive sentencing guidelines. These guidelines are established in a grid which uses Offense Gravity on one axis and Prior Record on the other. As one would expect, violent offenses dominate the higher offense gravity scores and therefore, are subject to longer minimum sentences than non-violent offenders. The guidelines also include sentence enhancements for the use of a weapon. A set of revised guidelines, now under going a public review process, proposes to further increase the offense gravity scores for violent offenders and

13    

also includes a new prior record category to capture the violent nature of a prior record. This effort is aimed at increasing the severity of sentences of violent offenders not subject to mandatory sentences and bringing them in line with the new mandatories enacted during the special session on crime (Appendix E).

While these efforts are certain to raise the already considerable prison time served by future violent offenders by lengthening the minimum sentence, those violent offenders already in prison are not subject to these new sentencing policies. Since the average minimum sentence and actual time served in prison for these violent offenders is already in excess of four years, we are dealing primarily with offenders sentenced before 1993. However, since parole at minimum is discretionary, parole policies can effect the time served in prison for these offenders. As shown in the data forms provided with this application, the number of violent prisoners released from prison in 1995 was less than half of the number released in 1994, and time served increased by six months. The increase in time served will most likely continue to increase as some of the offenders denied parole at the expiration of minimum are eventually paroled after serving some additional time in prison. This is the result of a new policy adopted by the Pennsylvania Board of Probation of Parole which gives special consideration to offenders convicted of "crimes of violence" and adds a new requirement that at least three of the Board's five members agree to any decision to parole these offenders.

*APP. 7*

U.S. Department of Justice
Office of Justice Programs
Corrections Program Office
633 Indiana Avenue, NW
Washington, DC 20531

# Data for Determining Eligibility for Violent Offender Incarceration and Truth-In-Sentencing Grants



## State / Territory:  Pennsylvania

### GENERAL INFORMATION

• Eligibility requirements —

Data will be used to determine eligibility for Violent Offender Incarceration grants under Section 20103, paragraph (b) and (c), and for Truth-In-Sentencing Incentive Grants under Section 20104, paragraph (a).

• Part 1 violent crime —

Section 20101 and 20105 provide the definition of 'Part 1 violent crime' to be used in completing this form.  Part 1 violent crime means murder and nonnegligent manslaughter, forcible rape, robbery, and aggravated assault as reported to the Federal Bureau of Investigation for purposes of the Uniform Crime Reports, or a reasonably comparable class of serious violent crimes as approved by the Attorney General.  If you are unable to provide data on Part 1 violent crimes, you may report data using the definition of 'Total violent crimes' as described in item 1.  Other definitions must be documented and will require approval.

• Technical assistance —

If you need assistance in completing this form, call the Corrections staff at the Bureau of Justice Statistics at (202) 307-0765.  For other assistance in completing the application, call the **Corrections Technical Assistance Line** at (800) 848-6325.

• Data accuracy —

When you have completed this form, certify the accuracy of the reported data by providing a signature from an approving official.

---

| DATA SUPPLIED BY | DATA APPROVED BY |
|---|---|
| NAME | NAME |
| **Andy Keyser** | **Doug Hoffman** |
| TITLE **Chief, Research and Data Management PA Department of Corrections** | TITLE **Manager, Statistical Analysis Cente PA Commission on Crime & Delinquency** |
| PHONE (area code, number, ext.) (717) 730-2732 | SIGNATURE ⟨signature⟩   DATE 8-2-96 |

State/Territory:

2. First Releases of Sentenced Violent Prisoners During the Calendar Year —

|  | | 1993 | 1994 | 1995 |
|---|---|---|---|---|
| A. | Number of Part 1 violent prisoners released | 1137 | 1069 | 522 |
| | or | | | |
| | Number of violent prisoners released (using other definition) | | | |
| B. | Average total maximum sentence length (in months) ► Exclude sentences of life or death | **Minimum** 48.1 <br> **Maximum** 117.3 | 46.6 <br> 113.7 | 48.1 <br> 115.3 |
| C. | Average time served in prison and jail (in months) by released violent prisoners | 53.7 | 52.9 | 58.9 |
| | Is jail time included? | ☒Yes ☐No | ☒Yes ☐No | ☒Yes ☐No |
| | Have prisoners with sentences of life or death been excluded? | ☒Yes ☐No | ☒Yes ☐No | ☒Yes ☐No |

---

### Definitions and Coverage

- Sentenced prisoners —      Report data only for prisoners with a total maximum sentence of more than 1 year.

- First releases —      Report data only for prisoners released for the first time on the current sentence. Exclude persons who were previously released for the same offense, returned to prison and then released again.

- Part 1 violent crimes —      Include murder and non-negligent manslaughter, forcible rape, robbery, and aggravated assault as reported to the FBI for purposes of the *Uniform Crime Reports.*

- Total maximum sentence length —      Report the total maximum sentence to incarceration including all consecutive sentences.

### Instructions

- Report (in Item 2A ) the number of Part 1 violent first releases in 1993, 1994, and 1995. If you are unable to report the number released, write "DK" in the space provided.

- If you are unable to report data on Part 1 violent first releases, use the same definition as used for Item 1B. The same definition must be used for all 3 years.

---

Comments: *In Pennsylvania, the minimum sentence establishes the earliest possible parole date. Parole is descretionary at any time between expiration of minimum sentence and maximum sentence. This information also excludes first and second degree murders who must have a life or execution sentence (3,200+ currently in state prison). Additionally, prisoners who died or who their conviction on sentence overturned were excluded.

*APP. 9*

State/Territory:

1. New Court Commitments of Sentenced Violent Prisoners During the Calendar Year —

| | 1993 | 1994 | 1995 |
|---|---|---|---|
| A. Number of sentenced persons admitted to prison for Part 1 violent crimes | 1833 | 2164 | 2063 |
| _or_ | | | |
| B. Total number of sentenced persons admitted for violent crimes | | | |

---

### Definitions and Coverage

• Sentenced prisoners —    Report data only for prisoners with a total maximum sentence of more than 1 year.

• New court commitments —    Include persons entering prison directly from court and not from any unsuccessful period of community supervision.

• Part 1 violent crimes —    Include murder and non-negligent manslaughter, forcible rape, robbery, and aggravated assault as reported to the FBI for purposes of the _Uniform Crime Reports_.

• Total violent crimes —    Include murder, manslaughter, rape, sexual assault, robbery, assault, extortion, intimidation, criminal endangerment, child abuse, and other offenses involving confrontational force or threat of force.

### Instructions

• Report (in Item 1A) the number of sentenced persons admitted to prison for Part 1 violent crimes in 1993, 1994, and 1995.

• If you are unable to provide the number admitted for Part 1 violent crimes in each year, write "DK" in the spaces provided (in Item 1A) and report data for Item 1B.

• If data for Item 1A are not available and Item 1B is blank, report the number admitted in each year using —
     (1)  the definition of **Total violent crimes**, or
     (2)  a definition consistent with your data in the BJS report, _Violent Offenders in State Prison: Sentences and Time Served_, July 1995.

• If you use a different definition, provide a description in the Comments section below. The same definition must be used for all 3 years.

---

Comments:

_APP. 10_

## Truth in Sentencing Eligibility

As a state with indeterminate sentencing and guidelines which are used to establish a minimum sentence which determines parole/release eligibility, Pennsylvania should be considered eligible for a Truth in Sentencing grant. As was mentioned in the documentation for the Tier 1 Violent Offender Incarceration Grant, Pennsylvania has a long standing tradition of truth in sentencing, including life sentences. A life prisoner in Pennsylvania can only be paroled if he receives a commutation of that sentence from the Governor. Please refer to the documentation provided in Appendix B.

Pennsylvania has a minimum and maximum sentencing structure. This structure is indeterminate in that once the offender has served his minimum under incarceration, he becomes eligible for parole. However, that parole is discretionary, and under current policy, unlikely to be granted at minimum for **violent** offenders. In BJA's report, **National Assessment of Structured Sentencing**, February 1996, Pennsylvania's sentencing structure is described as indeterminate with a footnote that it is partially determinate. The part that is determinate is the part that guarantees that Part 1 violent offenders sentenced to prison in Pennsylvania will serve at least 100% of their minimum sentence established under guidelines or mandatory statutes.

Whether the minimum sentence is established by the guidelines or mandatory statutes, the court has the authority to establish a sentence based on a range defined in statute. The statutory limit within the law refers to the maximum sentence and the minimum sentence cannot exceed one-half of the maximum sentence. The mandatory minimum sentence laws obviously limit that range by raising the lower limit of the range, however nothing in the mandatory provisions precludes the court from imposing a longer sentence as long as it is within the range allowable for that offense. The guidelines establish a presumptive range for the minimum sentence based on the seriousness of the current offense and the offender's prior record. The guidelines also include alternative presumptive ranges based on either aggravating or mitigating circumstances if the court finds such circumstances exist. The court also has authority to sentence outside of the presumptive ranges provided the reason for the departure are specified. Additionally, there are provisions for sentence enhancements based on the use of a deadly weapon or the distribution of a controlled substance to a juvenile or within 1000 feet of a school.

Once the sentence has been imposed by the court, the parole authority for that offender lies with the a separate administrative agency, the Pennsylvania Board of Probation and Parole. The Board has no authority to release offenders prior to the completion of their minimum sentence. They do however, have absolute release authority at any time between the expiration of the minimum sentence and the expiration of the maximum sentence. The presumptive guidelines used by the court not only set the minimum release date which controls when the Board may consider and offender for parole, but are also used in release consideration. If the minimum sentence imposed is less than the presumptive sentence range, the Board will give careful consideration as to why the court imposed such a sentence and may consider it a negative factor

APP  11

in the release decision. The majority of the current Board has only been serving for a little over a year and has not yet formalized many of the policy revisions they adopted as part of a major overhaul of Board policy. They are currently involved in a project to formalize much of that policy by developing official decision making guidelines which will rely heavily on sentencing guidelines to further guide decisions within the range of their authority. So not only will the guidelines be used to establish the minimum release date, but will be influential in establishing a release date within the statutorily defined range of the Board's discretion.

The fact that no offender receiving a state prison sentence can be paroled prior to the completion of his or her minimum sentence, is precisely why Pennsylvania has truth in sentencing. The sentence imposed by the court must be served. <u>Pennsylvania has no good time or other provision to allow parole release prior to the expiration of that sentence.</u>

The only exception to the application of sentencing guidelines for Part 1 violent offenders is that some of these offenders are subject to mandatory sentences based primarily on prior record or the use of a firearm in the commission of the offense. However, the requirement that the offender serve his minimum sentence remains and those offenders cannot be paroled prior to expiration of the minimum sentence. Except for the most recently enacted mandatory sentences, the mandatory minimum sentences are within the presumptive range of the guidelines and longer sentences may be imposed under the guidelines. The mandatories do not contradict the guidelines, but in essence have made compliance with guidelines mandatory for certain violent offenses instead of simply establishing presumptive ranges.

The following table shows the number of Part 1 violent offender released from prison for 1993 through 1995 and the average percent of total minimum sentence served by those offenders. The percent of minimum excludes lifers and capital cases in that they are not released, prisoners who have died, or prisoners who have had their sentence and/or conviction overturned on appeal.

## AVERAGE PERCENT OF MINIMUM SENTENCE SERVED FOR PART 1 VIOLENT OFFENDERS RELEASED FROM PA DOC 1993-1995

|  | 1993 | 1994 | 1995 |
|---|---|---|---|
| Number of releases | 1137 | 1069 | 522 |
| Average Percent of Minimum Served | 118.4% | 122.7% | 130.4% |

As part of our effort to monitor Pennsylvania's continuing compliance with truth in sentencing we will provide the above statistics for future years as they become available. However, the percent of minimum sentence served is very likely to increase as the effects of new the parole policies are felt and without a major change in statute, the percent of minimum served cannot fall

19

*APP. 12*

below 100% for any individual violent offender, and therefore the average percentage will always exceed 100%. In the unlikely event that same major change in statute would change current policy, we will gladly provide the same data on a monthly or quarterly basis.

APP. 13

OMB Approval No. 0348-0043

# APPLICATION FOR FEDERAL ASSISTANCE

| 2. DATE SUBMITTED 2/28/97 | Applicant Identifier |
|---|---|

| 1. TYPE OF SUBMISSION: | | |
|---|---|---|
| *Application* | *Preapplication* | 3. DATE RECEIVED BY STATE | State Application Identifier |
| [X] Construction | [ ] Construction | | |
| [ ] Non-Construction | [ ] Non-Construction | 4. DATE RECEIVED BY FEDERAL AGENCY | Federal Identifier |

**5. APPLICANT INFORMATION**

| Legal Name: **Pennsylvania Commission on Crime and Delinquency** | Organizational Unit: |
|---|---|
| Address (*give city, county, state, and zip code*):<br>P.O. Box 1167<br>Harrisburg, PA 17108-1167<br>Dauphin County | Name and telephone number of the person to be contacted on matters involving this application (*give area code*)<br><br>Richard D. Reeser<br>(717) 787-8559 |

| 6. EMPLOYER IDENTIFICATION NUMBER (EIN): | 7. TYPE OF APPLICANT: (*enter appropriate letter in box*)   [A] |
|---|---|
| ▓▓▓▓▓▓▓▓▓▓▓▓ | A. State                    H. Independent School Dist.<br>B. County                   I. State Controlled Institution of Higher Learning<br>C. Municipal                 J. Private University<br>D. Township                  K. Indian Tribe<br>E. Interstate                L. Individual<br>F. Intermunicipal            M. Profit Organization<br>G. Special District          N. Other (Specify): _____ |

| 8. TYPE OF APPLICATION: | |
|---|---|
| [X] New   [ ] Continuation   [ ] Revision | 9. NAME OF FEDERAL AGENCY: |
| If Revision, enter appropriate letter(s) in box(es): [ ] [ ] | Office of Justice Programs |
| A. Increase Award   B. Decrease Award   C. Increase Duration<br>D. Decrease Duration   Other (*specify*): | |

| 10 CATALOG OF FEDERAL DOMESTIC ASSISTANCE NUMBER: | 1 6 . 5 8 6 | 11. DESCRIPTIVE TITLE OF APPLICANT'S PROJECT: |
|---|---|---|
| TITLE: Violent Offender Incarceration and Truth-In-Sentencing Incentive Grants | | 1) Violent Offender Incarceration and Truth-In-Sentencing Grants<br>2) Department of Agriculture<br>3) July 1 to June 30 |

| 12 AREAS AFFECTED BY PROJECT (*cities, counties, states, etc.*): |
|---|
| Statewide |

**13 PROPOSED PROJECT**

| Start Date | Ending Date | 14. CONGRESSIONAL DISTRICTS OF: | |
|---|---|---|---|
| | | a. Applicant | b. Project |
| 10/1/96 | 9/30/2001 | All | All |

| 15 ESTIMATED FUNDING: | | 16. IS APPLICATION SUBJECT TO REVIEW BY STATE EXECUTIVE ORDER 12372 PROCESS? |
|---|---|---|
| a. Federal | $              .00 | a. YES. THIS PREAPPLICATION/APPLICATION WAS MADE AVAILABLE TO THE STATE EXECUTIVE ORDER 12372 PROCESS FOR REVIEW ON: |
| b. Applicant | $              .00 | DATE _____ |
| c. State | $              .00 | b. NO. [X] PROGRAM IS NOT COVERED BY E.O. 12372 |
| d. Local | $              .00 | [ ] OR PROGRAM HAS NOT BEEN SELECTED BY STATE FOR REVIEW |
| e. Other | $              .00 | |
| f. Program Income | $              .00 | 17. IS THE APPLICANT DELINQUENT ON ANY FEDERAL DEBT? |
| g. TOTAL | $              .00 | [ ] Yes   If "Yes," attach an explanation.   [X] No |

18 TO THE BEST OF MY KNOWLEDGE AND BELIEF, ALL DATA IN THIS APPLICATION/PREAPPLICATION ARE TRUE AND CORRECT, THE DOCUMENT HAS BEEN DULY AUTHORIZED BY THE GOVERNING BODY OF THE APPLICANT AND THE APPLICANT WILL COMPLY WITH THE ATTACHED ASSURANCES IF THE ASSISTANCE IS AWARDED

| a. Typed Name of Authorized Representative<br>Richard D. Reeser | b. Title Director, Bureau of Program Development | c. Telephone number<br>(717) 787-8559 |
|---|---|---|
| d. Signature of Authorized Representative<br>*[signature]* | | e. Date Signed<br>2-27-97 |

APP 14

Standard Form 424   (REV 4-88)
Prescribed by OMB Circular A-102

## Planned Use of Grant Funds

At the end of December, 1996, Pennsylvania's Department of Corrections (DOC) had a population of 34,537 inmates with a capacity of 22,244. The number of inmates in excess of capacity was 12,293. Therefore, the DOC was operating at 155% of capacity.

As originally indicated in the FY 1996 application, contingent upon the level of available grant funds , the Commonwealth of Pennsylvania intends to increase DOC capacity by implementing one or more of the following projects:

### SCI-Rockview 

This project consists of the construction of a 27,000 square foot housing unit with four dormitories, fifty double rooms, offices, toilet rooms, multi-purpose rooms, laundry and storage areas. It will also include improvements to the kitchen and dining areas to provide an additional 3,000 square feet of food prepararation area. Necessary improvements to perimeter security including a perimeter intrusion detection system (P.I.D.S.) are also part of the project. The anticipated net increase in available bed space for the confinement of violent offenders is 150.

### SCI-Graterford & SRCF Mercer

Both projects consist of the construction of 27,000 square foot housing units with four dormitories, fifty double rooms, offices, toilet rooms, multi-purpose rooms, laundry and storage areas. For both projects, the anticipated net increase in available bed space for the confinement of violent offenders is 300.

### SCI-Indiana

Construction of an additional 250 cells at this proposed facility for habitual/violent juvenile offenders.

### SCI-Forest

Construction of proposed 1000 cell facility in Forest County, Pennsylvania.

APP. 15

## Statutory Assurance

## Violent Offender Incarceration Program—Tier 1

The State/Territory of _____ Pennsylvania _____ assures that it has implemented, or will implement, correctional policies and programs, including Truth-in-Sentencing laws that ensure that violent offenders serve a substantial portion of the sentences imposed, that are designed to provide sufficiently severe punishment for violent offenders, including violent juvenile offenders, and that the prison time served is appropriately related to the determination that the inmate is a violent offender and for a period of time deemed necessary to protect the public.

Richard D. Reeser

**Certifying Official**

**Signature**

Director, Bureau of Program Development

**Title**

2-27-97

**Date**

APP. 16

8

**Attachment to Statutory Assurance-Violent Offender Incarceration Program--Tier 1**

Unlike many other states, Pennsylvania has long established sentencing and parole policies which embrace the principle of truth in sentencing.

Under Pennsylvania law, any offender who is sentenced to a maximum sentence of two years or more is not eligible for parole until he has completed serving his minimum term. This two year or greater maximum sentence threshold must be met in order for an offender to be sentenced to state prison. Though the Pennsylvania Department of Corrections is authorized to accept some offenders with maximum sentences of less than two years, only one (1) of the 5,711 court commitments to state prison in 1996, were sentenced to a maximum of under two years.

The "truth" in Pennsylvania's sentencing structure is that the earliest possible parole date for an offender is established in the court and proclaimed in that public forum. Minimum terms are established either by the use of presumptive sentencing guidelines or through the imposition of mandatory sentences. Pennsylvania's oldest mandatory sentences, for first or second degree murder exemplify this principle. Pennsylvania is one of very few states where the mandatory minimum sentence for each of those offenses, life imprisonment, actually means life imprisonment. The only relief from these life sentences are either an appeal overturning the conviction or a commutation by the Governor. In the last ten years, only 21 lifers have been released from prison by commutation, during that same period 133 died in prison and the Department of Corrections is currently incarcerating more than 3,300 lifers. Other mandatories for violent offenses in Pennsylvania include at least a five year mandatory minimum sentence for any "crime of violence" which is a subsequent violent offense or was committed with a firearm. Pennsylvania's "crime of violence" is a broader definition than the part 1 violent crime definition, most notably, "crime of violence" includes burglary of an occupied residence. In 1995, the Pennsylvania General Assembly held a special session on crime. One of the laws enacted in that session, Act 1995-21, increased the severity of these mandatory sentences under certain circumstances and enabled judges to impose life sentences for third time offenders . This special session also enacted a law, Act 1995-33, that requires that violent juvenile offenders who were previously adjudicated delinquent for a violent crime or who used a deadly weapon in the commission of the current offense be charged in adult court and subject to the same sanctions applicable to adult offenders.

Those violent offenders who are not subject to mandatory sentences in Pennsylvania, are sentenced under our presumptive sentencing guidelines. These guidelines are established in a grid which uses Offense Gravity on one axis and Prior Record on the other. As one would expect, violent offenses dominate the higher offense gravity scores and therefore, are subject to longer minimum sentences than non-violent offenders. The guidelines also include sentence enhancements for the use of a weapon. A set of revised guidelines, now under going a public review process, proposes to further increase the offense gravity scores for violent offenders and also includes a new prior record category to capture the violent nature of a prior record. This

9

*APP - 17*

effort is aimed at increasing the severity of sentences of violent offenders not subject to mandatory sentences and bringing them in line with the new mandatories enacted during the special session on crime.

While these efforts are certain to raise the already considerable prison time served by future violent offenders by lengthening the minimum sentence, those violent offenders already in prison are not subject to these new sentencing policies. Since the average minimum sentence and actual time served in prison for these violent offenders is already in excess of four years, we are dealing primarily with offenders sentenced before 1994. However, since parole at minimum is discretionary, parole policies can effect the time served in prison for these offenders. The number of violent offenders released from state prison has decreased by 35% since 1994 and the average time served by those offenders released has increased by over three months. This is the result of a new policy adopted by the Pennsylvania Board of Probation of Parole in 1995 which gives special consideration to offenders convicted of "crimes of violence" and adds a new requirement that at least three of the Board's five members agree to any decision to parole these offenders.

APP. 18

# Application Checklist—Tiers 2 and 3 and Truth-in-Sentencing

The application for Tiers 2 and 3 and the Truth-in-Sentencing Grant Program is a supplement to the Tier 1 application submitted in February 1997. All assurances, statements, and program descriptions included in the Tier 1 application apply to this supplement. Copies of all forms and assurances needed to apply are found in the Appendices to the Program Guidance and Application Kit. **Please include a completed copy of this checklist in your application. Check all boxes that apply.**

## General Requirements

Have You Included:

☒ A completed Application for Federal Assistance form SF-424?

☒ A completed copy of this checklist?

☐ If the State is seeking an alternative definition (any definition other than that provided in the UCR) for Part 1 violent crime, a description of the alternative definition and documentation of how it is applied?

## Violent Offender Incarceration Program Requirements

☒ **The State is applying for Violent Offender Incarceration Funds.** (Indicate type of funds requested.)

☒ State is applying for funds under Tier 2.

☒ State is applying for funds under Tier 3.

Have You Included:

☒ Completed Data for Determining Eligibility (DDE) Form (found in the Appendix A)?

☐ **If applying for the first time for Tier 2 and/or 3 funds,** a completed Data for Determining Eligibility Form (found in the Appendix D) that provides baseline data from years 1993-95?

## Truth-in-Sentencing Incentive Program Requirements

☒ **The State is applying for Truth-in-Sentencing funds.** (Please check the Truth-in-Sentencing criteria on the following page under which the State qualifies for funding.)

*(Continued on back)*

APP. 19

☐  **Determinate Sentencing State**

    ☐  The State has implemented Truth-in-Sentencing laws that require persons convicted of a Part 1 violent crime to serve not less than 85 percent of the sentence imposed.

    ☐  The State has implemented Truth-in-Sentencing laws that result in persons convicted of a Part 1 violent crime serving on average not less than 85 percent of the sentence imposed.

    ☐  The State has enacted, but not yet implemented, Truth-in-Sentencing laws that require the State, not later than 3 years after it submits its application for funds, to provide that persons convicted of a Part 1 violent crime serve not less than 85 percent of the sentence imposed.

☐  **Indeterminate Sentencing State**

    ☒  The State can demonstrate that persons convicted of a Part 1 violent crime on average serve not less than 85 percent of the prison term established under the State's sentencing and release guidelines.

    ☐  The State can demonstrate that persons convicted of a Part 1 violent crime on average serve not less than 85 percent of the maximum prison term allowed under the sentence imposed by the court.

**Have You Included:**

☐  **If applying for the first time,** a copy of legislation, guidelines, or other supporting information, as defined in the Program Guidance and Application Kit, which demonstrates the State's compliance with the Truth-in-Sentencing requirements?

☐  **If the applicant State qualified for Truth-in-Sentencing in FY 1996:**

    ☒  A description of changes to legislation, guidelines, or practices related to Truth-in-Sentencing?

    ☐  Please check here **if there have been no changes** in the legislation, guidelines, and/or practices, as provided and described in the FY 1996 application, that affect how offenders are sentenced and the percentage of sentence served?

☒  **All applicants,** supporting data as described in this Kit, if applicable?

# Submit Application To:

For FY 1997, applications for Tiers 2 and 3 and the Truth-in-Sentencing Grant Program must be postmarked no later than July 1, 1997, and should be sent to the address below. Faxed transmissions will be accepted, if received by the due date. The Program Guidance and Application Kit is available on the Internet at *http://www.ojp.usdoj.gov/cpo.*

**The Corrections Program Office**           Phone: **(800) 848–6325**
Office of Justice Programs                              (202) 305–4866 in D.C. Metro area
U.S. Department of Justice
633 Indiana Avenue NW., 4th Floor           FAX:   (202) 307–2019
Washington, DC 20531

*APP. 20*

OMB Approval No. 0348-0043

# APPLICATION FOR FEDERAL ASSISTANCE

| 2. DATE SUBMITTED 6/26/97 | Applicant Identifier |
|---|---|

| 1. TYPE OF SUBMISSION: | | 3. DATE RECEIVED BY STATE | State Application Identifier |
|---|---|---|---|

**1. TYPE OF SUBMISSION:**

| *Application* | *Preapplication* |
|---|---|
| ☒ Construction | ☐ Construction |
| ☐ Non-Construction | ☐ Non-Construction |

| 4. DATE RECEIVED BY FEDERAL AGENCY | Federal Identifier |
|---|---|

**5. APPLICANT INFORMATION**

Legal Name: **Pennsylvania Commission on Crime and Delinquency**

Organizational Unit:

Address (give city, county, state, and zip code):
**P.O. Box 1167**
**Harrisburg, PA  17108-1167**
**Dauphin County**

Name and telephone number of the person to be contacted on matters involving this application (give area code)
**Richard D. Reeser**
**(717) 787-8559**

**6. EMPLOYER IDENTIFICATION NUMBER (EIN):**

▮▮▮▮▮▮▮▮▮▮

**7. TYPE OF APPLICANT:** (enter appropriate letter in box)    **A**

A. State
B. County
C. Municipal
D. Township
E. Interstate
F. Intermunicipal
G. Special District

H. Independent School Dist.
I. State Controlled Institution of Higher Learning
J. Private University
K. Indian Tribe
L. Individual
M. Profit Organization
N. Other (Specify): _____

**8. TYPE OF APPLICATION:**

☒ New    ☐ Continuation    ☐ Revision

If Revision, enter appropriate letter(s) in box(es):  ☐  ☐

A. Increase Award    B. Decrease Award    C. Increase Duration
D. Decrease Duration    Other (specify):

_____

**9. NAME OF FEDERAL AGENCY:**

**Office of Justice Programs**

**10. CATALOG OF FEDERAL DOMESTIC ASSISTANCE NUMBER:**    1 6 . 5 8 6

TITLE: **Violent Offender Incarceration and Truth-In-Sentencing Incentive Grants**

**11. DESCRIPTIVE TITLE OF APPLICANT'S PROJECT:**

1) **Violent Offender Incarceration and Truth-In-Sentencing Grants**
2) **Department of Agriculture**
3) **July 1 to June 30**

**12. AREAS AFFECTED BY PROJECT** (cities, counties, states, etc.):

**Statewide**

**13. PROPOSED PROJECT:**

| Start Date | Ending Date |
|---|---|
| 10/1/96 | 9/30/2001 |

**14. CONGRESSIONAL DISTRICTS OF:**

| a. Applicant | b. Project |
|---|---|
| All | All |

**15. ESTIMATED FUNDING:**

| a. Federal | $ | .00 |
|---|---|---|
| b. Applicant | $ | .00 |
| c. State | $ | .00 |
| d. Local | $ | .00 |
| e. Other | $ | .00 |
| f. Program Income | $ | .00 |
| g. TOTAL | $ | .00 |

**16. IS APPLICATION SUBJECT TO REVIEW BY STATE EXECUTIVE ORDER 12372 PROCESS?**

a. YES. THIS PREAPPLICATION/APPLICATION WAS MADE AVAILABLE TO THE STATE EXECUTIVE ORDER 12372 PROCESS FOR REVIEW ON:

DATE _____

b. NO.  ☒  PROGRAM IS NOT COVERED BY E.O. 12372

☐ OR PROGRAM HAS NOT BEEN SELECTED BY STATE FOR REVIEW

**17. IS THE APPLICANT DELINQUENT ON ANY FEDERAL DEBT?**

☐ Yes    If "Yes," attach an explanation.    ☒ No

**18. TO THE BEST OF MY KNOWLEDGE AND BELIEF, ALL DATA IN THIS APPLICATION/PREAPPLICATION ARE TRUE AND CORRECT. THE DOCUMENT HAS BEEN DULY AUTHORIZED BY THE GOVERNING BODY OF THE APPLICANT AND THE APPLICANT WILL COMPLY WITH THE ATTACHED ASSURANCES IF THE ASSISTANCE IS AWARDED**

| a. Typed Name of Authorized Representative Richard D. Reeser | b. Title Director, Bureau of Program Development | c. Telephone number (717) 787-8559 |
|---|---|---|
| d. Signature of Authorized Representative | | e. Date Signed 6-26-97 |

Previous Editions Not Usable

APP. 21

Standard Form 424    (REV 4-88)
Prescribed by OMB Circular A-102

U.S. Department of Justice
Office of Justice Programs
Corrections Program Office
633 Indiana Avenue, NW
Washington, DC 20531

# Data for Determining Eligibility for
# Violent Offender Incarceration and
# Truth-In-Sentencing Grants,
# Fiscal Year 1997



## State / Territory: Pennsylvania

### GENERAL INFORMATION

- Eligibility requirements — Data will be used to determine eligibility for Fiscal Year 1997 Violent Offender Incarceration grants under Section 20103, paragraph (b) and (c), and for Truth-In-Sentencing Incentive Grants under Section 20104, paragraph (a).

- Part 1 violent crime — Section 20101 and 20105 provide the definition of 'Part 1 violent crime' to be used in completing this form. Part 1 violent crime means murder and nonnegligent manslaughter, forcible rape, robbery, and aggravated assault as reported to the Federal Bureau of Investigation for purposes of the Uniform Crime Reports, or a reasonably comparable class of serious violent crimes as approved by the Attorney General. If you applied for funding in FY96 and used an approved, alternative definition, use the same definition for this year.

- Technical assistance — If you need assistance in completing this form, call the Corrections staff at the Bureau of Justice Statistics at (202) 633-3000. For other assistance in completing the application, call the **Corrections Technical Assistance Line** at (800) 848-6325.

- Data accuracy — When you have completed this form, certify the accuracy of the reported data by providing a signature from an approving official.

---

### DATA SUPPLIED BY

NAME
George Diamond

TITLE  Lead Classification and Inmate
Record System Analyst
Department of Corrections

PHONE (area code, number, ext.)
(717) 730-2731

### DATA APPROVED BY

NAME
Douglas Hoffman

TITLE  Manager, Statistical
Analysis Center, PCCD

SIGNATURE _____  DATE 6/24/97

APP. 22

State/Territory:

**1. New Court Commitments of Sentenced Violent Prisoners During the Calendar Year —**

1996

A. Number of sentenced persons
admitted to prison for Part 1
violent crimes                                    **1982**

or

B. Total number of sentenced
persons admitted for violent
crimes

---

### Definitions and Coverage

- **Sentenced prisoners —**      Report data only for prisoners with a total maximum sentence of more than 1 year.

- **New court commitments —**    Include persons entering prison directly from court and not from any unsuccessful
                                 period of community supervision.

- **Part 1 violent crimes —**    Include murder and non-negligent manslaughter, forcible rape, robbery, and
                                 aggravated assault as reported to the FBI for purposes of the *Uniform Crime
                                 Reports.*

- **Total violent crimes —**     Use the definition that was approved for your previous application.

### Instructions

- Report (in Item 1A) the  number of sentenced persons admitted to prison for Part 1 violent crimes in 1996.

- If you are unable to provide the number admitted for Part 1 violent crimes,  write "DK"
  in the spaces provided (in Item 1A)  and report data for Item 1B.

---

Comments:

APP. 23

**State/Territory:**

**2. First Releases of Sentenced Violent Prisoners During the Calendar Year —**

|  |  | 1996 |
|---|---|---|

A. Number of Part 1 violent prisoners released ..... **563**

or

Number of violent prisoners released (using previously approved definition) .....

*

B. Average total maximum **Minimum** **48.7**
sentence length (in months) **Maximum** **119.2**
► Exclude sentences of life or death

C. Average time served in prison and jail (in months) by released violent prisoners ..... **61.1**

Is jail time included? ☒ Yes ☐ No

Have prisoners with sentences of life or death been excluded? ☒ Yes ☐ No

---

### Definitions and Coverage

• **Sentenced prisoners —** Report data only for prisoners with a total maximum sentence of more than 1 year.

• **First releases —** Report data only for prisoners released for the first time on the current sentence. Exclude persons who were previously released for the same offense, returned to prison and then released again.

• **Part 1 violent crimes —** Include murder and non-negligent manslaughter, forcible rape, robbery, and aggravated assault as reported to the FBI for purposes of the *Uniform Crime Reports*.

• **Total maximum sentence length —** Report the total maximum sentence to incarceration including all consecutive sentences. Do not assign numeric values to sentences of life or death.

### Instructions

• Report (in Item 2A ) the number of Part 1 violent first releases in 1996. If you are unable to report the number released, write "DK" in the space provided.

• If you are unable to report data on Part 1 violent first releases, use the same definition used in your previous application for FY96.

---

Comments: *In Pennsylvania, the minimum sentence establishes the earliest possible parole date. Parole is discretionary at any time between expiration of minimum sentence and maximum sentence. This information also excludes first and second degree murders who must have a life or execution sentence (approximately 3500 currently in prison). Additionally, prisoners who have died or who had their conviction or sentence overturned were excluded.

APP. 24