# APPLICATION FOR FEDERAL ASSISTANCE

OMB Approval No. 0348-0043

| | |
|---|---|
| **2. DATE SUBMITTED** 3/1/99 | **Applicant Identifier** |
| **3. DATE RECEIVED BY STATE** | **State Application Identifier** |
| **4. DATE RECEIVED BY FEDERAL AGENCY** | **Federal Identifier** |

**1. TYPE OF SUBMISSION:**
- Application
  - [X] Construction
  - [ ] Non-Construction
- Preapplication
  - [ ] Construction
  - [ ] Non-Construction

**5. APPLICANT INFORMATION**

Legal Name: Pennsylvania Commission on Crime and Delinquency

Organizational Unit:

Address (give city, county, state and zip code):
P.O. Box 1167
Harrisburg, PA 17108-1167
Dauphin County

Name and telephone number of the person to be contacted on matters involving the application (give area code):
James A. Strader
(717) 787-8559, Ext. 3071

**6. EMPLOYER IDENTIFICATION (EIN)**: [redacted]

**7. TYPE OF APPLICANT:** (enter appropriate letter in box) **A**

A. State  H. Independent School Dist.
B. County  I. State Controlled Institution of Higher Learning
C. Municipal  J. Private Industry
D. Township  K. Indian Tribe
E. Interstate  L. Individual
F. Intermunicipal  M. Profit Organization
G. Special District  N. Other (specify):

**8. TYPE OF APPLICATION:**
[X] New   [ ] Continuation   [ ] Revision

If Revision, enter appropriate letter(s) in box(es): [ ] [ ]
A. Increase Award    B. Decrease Award    C. Increase Duration
D. Decrease Duration    Other (specify):

**9. NAME OF FEDERAL AGENCY:**
Office of Justice Programs

**10. CATALOG OF FEDERAL DOMESTIC ASSISTANCE NUMBER:** 16 - 586
TITLE: Violent Offender Incarceration and Truth-In-Sentencing Incentive Grants

**11. DESCRIPTIVE TITLE OF APPLICANTS PROJECT:**
1. Violent Offender Incarceration and Truth-In-Sentencing Grants (Tier I)
2. Department of Agriculture
3. July 1 to June 30

**12. AREAS AFFECTED BY PROJECT** (cities, counties, states, etc.):
Statewide

**13. PROPOSED PROJECT:**

| Start Date | Ending Date |
|---|---|
| 10/1/98 | 9/30/2004 |

**14. CONGRESSIONAL DISTRICTS OF:**

| a. Applicant | b. Project |
|---|---|
| All | All |

**15. ESTIMATED FUNDING:**

| | |
|---|---|
| a. Federal | $1,532,819.00 |
| b. Applicant | $.00 |
| c. State | $170,313.00 |
| d. Local | $.00 |
| e. Other | $.00 |
| f. Program Income | $.00 |
| g. TOTAL | $1,703,132.00 |

**16. IS APPLICATION SUBJECT TO REVIEW BY STATE EXECUTIVE ORDER 12372 PROCESS?**

a. YES. THIS PREAPPLICATION/APPLICATION WAS MADE AVAILABLE TO THE STATE EXECUTIVE ORDER 12372 PROCESS FOR REVIEW ON:
DATE _____

b. NO. [X] PROGRAM IS NOT COVERED BY E.O. 12372
[ ] OR PROGRAM HAS NOT BEEN SELECTED BY STATE FOR REVIEW

**17. IS THE APPLICANT DELINQUENT ON ANY FEDERAL DEBT?**
[ ] Yes   If "Yes," attach an explanation.   [X] No

**18. TO THE BEST OF MY KNOWLEDGE AND BELIEF, ALL DATA IN THIS APPLICATION/PREAPPLICATION ARE TRUE AND CORRECT. THE DOCUMENT HAS BEEN DULY AUTHORIZED BY THE GOVERNING BODY OF THE APPLICANT AND THE APPLICANT WILL COMPLY WITH THE ATTACHED ASSURANCES IF THE ASSISTANCE IS AWARDED**

| a. Typed Name of Authorized Representative | b. Title | c. Telephone number |
|---|---|---|
| Richard D. Reeser | Director, Bureau of Program Development | (717) 787-8559 |

d. Signature of Authorized Representative: [signature]

e. Date Signed: 3-1-99

APP 44

*Violent Offender Incarceration/Truth In Sentencing Grant*
*FY 1999 Application*
*Department of Corrections*
*Submission on Planned Use of Funds and Project Status. (Tier 1 Application)*

*Planned Use of Funds*

At the end of December 1998, the Pennsylvania Department of Corrections had a population of 36,377 inmates with a capacity of 24,247 and was operating at 150% of capacity. Housing considerations of violent offenders continue as a priority within the operational management function.

The Pennsylvania Department of Corrections has identified two new construction initiatives that, contingent upon the level of available grant funds, would be targeted. They include:

State Regional Correctional Facility at Muncy
Design and erection of a 39,000 square foot Level Four (L4) housing unit with 128 cells; control room; dayrooms; unit management offices; multi-purpose rooms; showers; janitor's closets; storage rooms; and mechanical/electrical spaces. This facility is one of two statewide which house female offenders. The anticipated net increase in available bed space for the confinement of violent offenders is 230.

State Correctional Facility at Dallas
Design and erection of a 39,000 square foot Level Four (L4) housing unit with 128 cells; control room; dayrooms; unit management offices; multi-purpose rooms; showers; janitor's closets; storage rooms; and mechanical/electrical spaces. The anticipated net increase in available bed space for the confinement of violent offenders is 230.

These two targeted housing unit projects emphasize standard planned design and space usage and will facilitate operational efficiencies within the selected facilities housing violent offenders. Upon completion, these projects will expand available bed space by approximately 460 units and serve to accommodate Pennsylvania's incarceration strategy relating to violent offender populations.

Additionally, the Department intends to allocate, as permitted, 10% of funds received toward the expansion of the States approved drug testing, intervention and sanctions program. It is anticipated that approximately 70% of this portion of funds will be utilized to expand usage of canine teams and the remaining 30% of this portion of funds will be utilized to expand usage of hand held drug detection devices at all institutions. These items are critical elements of the Department's approved policy for a comprehensive Drug Interdiction Program and have contributed significantly to a zero tolerance strategy for illegal drugs within Pennsylvania prisons.

App. 45

### *Project Status (Previous Awards)*

Funds received in prior year awards have been designated for construction initiatives to expand housing capacity and complete infrastructure renovations that will enhance overall security at five facilities in Pennsylvania housing violent offenders. The State Correctional Institution (SCI) site, designated projects and status are provided below.

| *Project* | *Status* |
|---|---|
| SCI Rockview | Architect assigned on 7/14/98 for completion of 148 beds; kitchen/dining room renovations; perimeter upgrades. Projected completion of project is 3/08/2001. |
| SCI Graterford | |
|   Kitchen/Dining Room renovations | Awaiting Budget Office approval to bid. |
|   Level 2 Housing Unit Fencing | Architect assigned on 1/08/99 for design. |
|   Perimeter Upgrades | Architect assigned on 1/08/99 for design. |
| SRCF Mercer | Request for authorization for project submitted in 1999/2000 Capital Budget Request. |
|   Level 3 Housing Unit | |
|   Perimeter Upgrades | |
| SCI Greensburg<br>Level 3 Housing Unit | Request for authorization for project submitted in 1999/2000 Capital Budget Request. |
| SCI Cresson<br>Level 3 Housing Unit | Request for authorization for project submitted in 1999/2000 Capital Budget Request. |

The administrative approval process established for construction initiatives at the state level is lengthy and has contributed to a delay in projects getting started. Outreach efforts have been made to the authorizing agency (Department of General Services) at the executive level which serve to establish these projects as grant priorities and shorten the overall response time.

App. 46

# Statutory Assurance

# Violent Offender Incarceration Program—Tier 1

The State/Territory of _____**Pennsylvania**_____ assures that it has implemented, or will implement, correctional policies and programs, including truth-in-sentencing laws that ensure that violent offenders serve a substantial portion of the sentences imposed, that are designed to provide sufficiently severe punishment for violent offenders, including violent juvenile offenders, and that the prison time served is appropriately related to the determination that the inmate is a violent offender and for a period of time deemed necessary to protect the public.

Richard D. Reeser

**Certifying Official (Name)**

Director, Bureau of Program Development

**Title**

_____
**Signature**

3-1-99
**Date**

APP 47

## Attachment to Statutory Assurance-Violent Offender Incarceration Program--Tier 1

Unlike many other states, Pennsylvania has long established sentencing and parole policies which embrace the principle of truth in sentencing.

Under Pennsylvania law, any offender who is sentenced to a maximum sentence of two years or more is not eligible for parole until he has completed serving his minimum term. This two year or greater maximum sentence threshold must be met in order for an offender to be sentenced to state prison. Though the Pennsylvania Department of Corrections is authorized to accept some offenders with maximum sentences of less than two years, only one (1) of the 5,711 court commitments to state prison in 1996, were sentenced to a maximum of under two years.

The "truth" in Pennsylvania's sentencing structure is that the earliest possible parole date for an offender is established in the court and proclaimed in that public forum. Minimum terms are established either by the use of presumptive sentencing guidelines or through the imposition of mandatory sentences. Pennsylvania's oldest mandatory sentences, for first or second degree murder exemplify this principle. Pennsylvania is one of very few states where the mandatory minimum sentence for each of those offenses, life imprisonment, actually means life imprisonment. The only relief from these life sentences are either an appeal overturning the conviction or a commutation by the Governor. In the last ten years, only 21 lifers have been released from prison by commutation, during that same period 133 died in prison and the Department of Corrections is currently incarcerating more than 3,300 lifers. Other mandatories for violent offenses in Pennsylvania include at least a five year mandatory minimum sentence for any "crime of violence" which is a subsequent violent offense or was committed with a firearm. Pennsylvania's "crime of violence" is a broader definition than the part 1 violent crime definition, most notably, "crime of violence" includes burglary of an occupied residence. In 1995, the Pennsylvania General Assembly held a special session on crime. One of the laws enacted in that session, Act 1995-21, increased the severity of these mandatory sentences under certain circumstances and enabled judges to impose life sentences for third time offenders. This special session also enacted a law, Act 1995-33, that requires that violent juvenile offenders who were previously adjudicated delinquent for a violent crime or who used a deadly weapon in the commission of the current offense be charged in adult court and subject to the same sanctions applicable to adult offenders.

Those violent offenders who are not subject to mandatory sentences in Pennsylvania, are sentenced under our presumptive sentencing guidelines. These guidelines are established in a grid which uses Offense Gravity on one axis and Prior Record on the other. As one would expect, violent offenses dominate the higher offense gravity scores and therefore, are subject to longer minimum sentences than non-violent offenders. The guidelines also include sentence enhancements for the use of a weapon. A set of revised guidelines, which took effect in June, 1997, further increase the offense gravity scores for violent offenders and also includes a new prior record category to capture the violent nature of a prior record. This effort is aimed at

APP- 48

increasing the severity of sentences of violent offenders not subject to mandatory sentences and bringing them in line with the new mandatories enacted during the special session on crime.

While these efforts are certain to raise the already considerable prison time served by future violent offenders by lengthening the minimum sentence, those violent offenders already in prison are not subject to these new sentencing policies. Since the average minimum sentence and actual time served in prison for these violent offenders is already in excess of four years, we are dealing primarily with offenders sentenced before 1994. However, since parole at minimum is discretionary, parole policies can effect the time served in prison for these offenders. The number of violent offenders released from state prison has decreased by 35% since 1994 and the average time served by those offenders released has increased by over three months. This is the result of a new policy adopted by the Pennsylvania Board of Probation of Parole in 1995 which gives special consideration to offenders convicted of "crimes of violence" and adds a new requirement that at least three Board members agree to any decision to parole these offenders.

# Application Checklist—Tiers 2 and 3 and Truth-in-Sentencing

The application for Tiers 2 and 3 and the Truth-in-Sentencing Grant Program is a supplement to the FY 1999 Tier 1 application. All assurances, statements, and program descriptions included in the Tier 1 application apply to this supplement. Copies of all forms and assurances needed to apply are found in the Appendices to the Program Guidance and Application Kit.

## Have You Included?

*(Please check each box, as appropriate, and include the completed checklist in your application.)*

### General Requirements

- [x] A completed Application for Federal Assistance form, SF-424.

- [ ] If the State is seeking an alternative definition (any definition other than that provided in the UCR) for Part 1 violent crime, a description of the alternative definition and documentation of how it is applied.

- [x] A completed copy of this checklist.

### Violent Offender Incarceration Program Requirements

- [x] Check box if the State is applying for Violent Offender Incarceration Funds. (Check box below to indicate type of funds requested.)

    - [x] State is applying for funds under Tier 2.

    - [x] State is applying for funds under Tier 3.

- [x] Completed Data for Determining Eligibility (DDE) form (found in the Appendix A).

### Truth-in-Sentencing Incentive Program Requirements

- [x] Check box if the State is applying for Truth-in-Sentencing funds. (Please check "Determinate" or "Indeterminate" to specify the State's sentencing structure, and then check the Truth-in-Sentencing criteria under which the State qualifies for funding.)

- [ ] **Determinate Sentencing State**

    - [ ] The State has implemented Truth-in-Sentencing laws that require persons convicted of a Part 1 violent crime to serve not less than 85 percent of the sentence imposed.

    - [ ] The State has implemented Truth-in-Sentencing laws that result in persons convicted of a Part 1 violent crime serving on average not less than 85 percent of the sentence imposed.

*(Continued on back)*

APP. 50

- ☐ The State has enacted, but not yet implemented, Truth-in-Sentencing laws that require the State, not later than 3 years after it submits its original Truth-in-Sentencing application for funds, to provide that persons convicted of a Part 1 violent crime serve not less than 85 percent of the sentence imposed.

☒ **Indeterminate Sentencing State**

- ☒ The State can demonstrate that persons convicted of a Part 1 violent crime on average serve not less than 85 percent of the prison term established under the State's sentencing and release guidelines.

- ☐ The State can demonstrate that persons convicted of a Part 1 violent crime on average serve not less than 85 percent of the maximum prison term allowed under the sentence imposed by the court.

☒ **Check box if the applicant State qualified for Truth-in-Sentencing in FY 1998:**

  ☐ Check the box if there have been changes and provide a description of any changes to Truth-in-Sentencing legislation, guidelines, or practices.

> ☒ Please check here **if there have been no changes** in the legislation, guidelines, and/or practices, as provided and described in your previous application, that affect how violent offenders are sentenced and the percentage of sentence served.

- ☐ **If applying for the first time as a determinate sentencing State,** a copy of legislation, guidelines, or other supporting information which demonstrates the State's compliance with the Truth-in-Sentencing requirements as defined in the Program Guidance and Application Kit.

- ☐ **If applying for the first time as a indeterminate sentencing State,** documentation to show that the State practiced indeterminate sentencing on April 26, 1996 and met the eligibility criteria as of that date.

- ☒ **All Truth-in-Sentencing applicants must provide supporting data as described in this kit;** if applicable.

## Submit Application To:

FY 1999 applications for Tiers 2 and 3 and Truth-in-Sentencing funds must be postmarked no later than **July 1, 1999,** and should be sent to the address below. Transmissions sent by FAX or e-mail will be accepted, if received by the due date. The Program Guidance and Application Kit is available on the Internet at *http://www.ojp.usdoj.gov/cpo*.

Office of Justice Programs         Phone: **(800) 848–6325**
**Corrections Program Office**              (202) 305–4866 in D.C. Metro area
810 7th Street NW, 8th Floor       FAX:   (202) 307–2019
Washington, DC  20531              E-mail: *askcpo@ojp.usdoj.gov*

APP- 51

# APPLICATION FOR FEDERAL ASSISTANCE

OMB Approval No. 0348-0043

**2. DATE SUBMITTED:** 6/29/99
**Applicant Identifier:**

**1. TYPE OF SUBMISSION:**
Application: [X] Construction  [ ] Non-Construction
Preapplication: [ ] Construction  [ ] Non-Construction

**3. DATE RECEIVED BY STATE:** State Application Identifier:

**4. DATE RECEIVED BY FEDERAL AGENCY:** Federal Identifier:

**5. APPLICANT INFORMATION**

Legal Name: Pennsylvania Commission on Crime and Delinquency
Organizational Unit:

Address:
P.O. Box 1167
Harrisburg, PA 17108-1167
Dauphin County

Name and telephone number of the person to be contacted:
James A. Strader
(717) 787-8559, extension 3071

**6. EMPLOYER IDENTIFICATION (EIN):** [redacted]

**7. TYPE OF APPLICANT:** A (State)

**8. TYPE OF APPLICATION:** [X] New  [ ] Continuation  [ ] Revision

**9. NAME OF FEDERAL AGENCY:** Office of Justice Programs

**10. CATALOG OF FEDERAL DOMESTIC ASSISTANCE NUMBER:** 16-586
TITLE: Violent Offender Incarceration and Truth-in-Sentencing Incentive Grants

**11. DESCRIPTIVE TITLE OF APPLICANTS PROJECT:**
1. Violent Offender Incarceration and Truth-in Sentencing Grants.
2. Department of Agriculture.
3. July 1 to June 30.

**12. AREAS AFFECTED BY PROJECT:** Statewide

**13. PROPOSED PROJECT:**
Start Date: 10/1/96
Ending Date: 9/30/2003

**14. CONGRESSIONAL DISTRICTS OF:**
a. Applicant: All
b. Project: All

**15. ESTIMATED FUNDING:**

| | |
|---|---|
| a. Federal | $ .00 |
| b. Applicant | $ .00 |
| c. State | $ .00 |
| d. Local | $ .00 |
| e. Other | $ .00 |
| f. Program Income | $ .00 |
| g. TOTAL | $ .00 |

**16. IS APPLICATION SUBJECT TO REVIEW BY STATE EXECUTIVE ORDER 12372 PROCESS?**
b. NO [X] PROGRAM IS NOT COVERED BY E.O. 12372

**17. IS THE APPLICANT DELINQUENT ON ANY FEDERAL DEBT?** [X] No

**18.** To the best of my knowledge and belief, all data in this application/preapplication are true and correct...

a. Typed Name of Authorized Representative: Richard D. Reeser
b. Title: Director, Bureau of Program Development
c. Telephone number: (717) 787-8559
d. Signature of Authorized Representative: [signed]
e. Date Signed: 6-29-99

APP. 52

| | | |
|---|---|---|
| **State/Territory:** | | |

**2. First Releases of Sentenced Violent Prisoners During the Calendar Year —**

                                1998

- A. Number of Part 1 violent prisoners released      **1210**

    or

    Number of violent prisoners released (using previously approved definition)     _____

- B. Average total maximum sentence length (in months) (Exclude sentences of life or death)
  - *Minimum     53.96
  - Maximum     131.30

- C. Average time served in prison and jail (in months) by released violent prisoners     **69.79**

  ▸ Is jail time included?     ☒ Yes  ☐ No

  ▸ Have prisoners with sentences of life or death been excluded?     ☒ Yes  ☐ No

### Definitions and Coverage

- **Sentenced prisoners —** Report data only for prisoners with a total maximum sentence of more than 1 year.

- **First Releases —** Report data only for prisoners released for the first time on the current sentence. Exclude persons who were previously released for the same offense, returned to prison and then released again.

- **Part 1 violent crimes —** Include murder and non-negligent manslaughter, forcible rape, robbery, and aggravated assault as reported to the FBI for purposes of the Uniform Crime Reports.

- **Total maximum sentence length —** Report the total maximum sentence to incarceration including all consecutive sentences. Do not assign numeric values to sentences of life or death.

### Instructions

- Report (in Item 2A) the number of Part 1 violent first releases in 1998. If you are unable to report the number released, write "DK" in the space provided.

- If you are unable to provide the number admitted for Part 1 violent first releases, use the same definition used in your previous application.

Comments: *In Pennsylvania, the minimum sentence establishes the earliest possible parole date. Parole is discretionary at any time between expiration and minimum sentence and maximum sentence. This information also excludes first and second degree murders who must have a life or execution sentence (approximately 3500 currently in prison). Additionally, prisoners who have died or who had their conviction or sentence overturned were excluded.

APP 53

State/Territory: _____

3. **Violent prisoners covered under Truth-in-Sentencing Laws —**

|  |  | New court commitments, 1998 | First releases, 1998 |
|---|---|---|---|
| A. | Number violent prisoners | 1854 | 1210 |
| B. | Average total maximum sentence length (in months) — Minimum | 74.17 | 53.96 |
|  | Maximum | 159.52 | 131.20 |
|  | (Exclude sentences of life or death) |  |  |
| C. | Average time served in prison and jail (in months) | 74.17 | 69.79 |
|  | ▸ Is jail time included? | ☒ Yes ☐ No | ☒ Yes ☐ No |
|  | ▸ Have prisoners with sentences of life or death been excluded? | ☒ Yes ☐ No | ☒ Yes ☐ No |

### Definitions and Coverage

- **Sentenced prisoners —** Report data only for prisoners with a total maximum sentence of more than 1 year.

- **New court commitments —** Include persons entering prison directly from court and not from any unsuccessful period of community supervision.

- **First Releases —** Report data only for prisoners released for the first time on the current sentence. Exclude persons who were previously released for the same offense, returned to prison and then released again.

- **Violent prisoners —** Include prisoners admitted or released for murder and non-negligent manslaughter, forcible rape, robbery, and aggravated assault as reported to the FBI for purposes of the Uniform Crime Reports. If you used an approved, alternative definition in your application for FY 1998, use the same definition this year.

- **Total maximum sentence length —** Report the total maximum sentence to incarceration including all consecutive sentences. Do not assign numeric values to sentences of life or death.

- **Time served —** For admissions, report the average minimum time expected to be served before the prisoners will become eligible for first release. Include jail time, if available. For releases, report the actual average time served in prison and jail before first release.

### Instructions

- If you are unable to report data for any item, write "DK" in the space provided.

Comments:

## TRUTH-IN-SENTENCING ELIGIBILITY

As a state with indeterminate sentencing and guidelines which are used to establish a minimum sentence which determines parole/release eligibility, Pennsylvania continues to be eligible for a Truth-in-Sentencing grant. Pennsylvania has a long-standing tradition of truth-in-sentencing, including life sentences. A life prisoner in Pennsylvania can only be paroled if he receives a commutation of that sentence from the Governor.

Pennsylvania has a minimum and maximum sentencing structure. This structure is indeterminate in that once the offender has served his minimum under incarceration, he becomes eligible for parole. However, that parole is discretionary, and under current policy, unlikely to be granted at minimum for **violent** offenders. In BJA's report, **National Assessment of Structured Sentencing,** February 1996, Pennsylvania's sentencing structure is described as indeterminate with a footnote that is partially determinate. The part that is determinate is the part that guarantees that Part 1 violent offenders sentenced to prison in Pennsylvania will serve at least 100% of their minimum sentence established under guidelines or mandatory statutes. Additional descriptive information concerning Pennsylvania's sentencing structure may be found in the October 4, 1996 letter from the Executive Director, Pennsylvania Commission on Sentencing, to the Corrections Program Office (Appendix A).

Whether the minimum sentence is established by the guidelines or mandatory statutes, the court has the authority to establish a sentence based on a range defined in statute. The statutory limit within the law refers to the maximum sentence and the minimum sentence cannot exceed one-half of the maximum sentence. The mandatory minimum sentence laws obviously limit that range by raising the lower limit of the range. However, nothing in the mandatory provisions precludes the court from imposing a longer sentence as long as it is within the range allowable for that offense. The guidelines establish a presumptive range for the minimum sentence based on the seriousness of the current offense and the offender's prior record. The guidelines also include alternative presumptive ranges based on either aggravating or mitigating circumstances if the court finds such circumstances exist. The court also has authority to sentence outside of the presumptive ranges provided the reasons for the departure are specified. Additionally, there are provisions for sentence enhancements based on the use of a deadly weapon or the distribution of a controlled substance to a juvenile or within 1,000 feet of a school.

Once the sentence has been imposed by the court, the parole authority for that offender lies with a separate administrative agency, the Pennsylvania Board of Probation and Parole. The Board has no authority to release offenders prior to the completion of their minimum sentence. They do, however, have absolute release authority at any time between the expiration of the minimum sentence and the expiration of the maximum sentence. The presumptive guidelines used by the court not only set the minimum release date which controls when the Board may consider an offender for parole, but are also used in release consideration. If the minimum sentence imposed is less than the presumptive sentence range, the Board will give careful consideration as to why the court imposed such a sentence and may consider it a negative factor in the release decision. As a result of changes in Board membership, the current Board has not yet formalized many of

APP. 55

the policy revisions they adopted as part of a major overhaul of Board policy. They are currently involved in a project to formalize much of that policy by developing official decision making guidelines.

The fact that no offender receiving a state prison sentence can be paroled prior to the completion of his or her minimum sentence, is precisely why Pennsylvania has truth-in-sentencing. The sentence imposed by the court must be served. <u>Pennsylvania has no good time or other provision to allow parole release prior to the expiration of that sentence</u>.

The only exception to the application of sentencing guidelines for Part 1 violent offenders is that some of these offenders are subject to mandatory sentences based primarily on a prior record or the use of a firearm in the commission of the offense. However, the requirement that the offender serve his minimum sentence remains and those offenders cannot be paroled prior to expiration of the minimum sentence. <u>As a result of recent revisions of the sentencing guidelines, the majority of mandatory minimum sentences are within the presumptive range of the guidelines and longer sentences may be imposed under the guidelines</u>. The mandatories have made compliance with guidelines mandatory for certain violent offenses instead of simply establishing presumptive ranges. A summary of the changes in the sentencing guidelines, which took effect on June 13, 1997, is contained in Appendix B.

The following table shows the number of Part 1 violent offenders released from prison for 1994 through 1998 and the total average percent of minimum sentence served by those offenders. The percent of minimum excludes lifers and capital cases in that they are not released, prisoners who have died, or prisoners who have had their sentence and/or conviction overturned on appeal.

### AVERAGE PERCENT OF MINIMUM SENTENCE SERVED FOR PART 1 VIOLENT OFFENDERS RELEASED FROM PA DOC 1994-1998

|  | 1994 | 1995 | 1996 | 1997 | 1998 |
|---|---|---|---|---|---|
| Number of Releases | 1,069 | 522 | 563 | 1,300 | 1,210 |
| Percent of Minimum Served | 113.5% | 122.5% | 125.5% | 144.3% | 129.3% |

As part of our effort to monitor Pennsylvania's continuing compliance with truth-in-sentencing, we will provide the above statistics for future years as they become available. However, the percent of minimum sentence served is very likely to increase as the effects of new parole policies are felt and without a major change in statute, the percent of minimum served cannot fall below 100% for any individual violent offender, and therefore the average percentage will always exceed 100%.

APP. 56