U.S. DEPARTMENT OF JUSTICE
OFFICE OF JUSTICE PROGRAMS

**Corrections Program Office**

**Grant**

PAGE 1 OF 2

| | |
|---|---|
| **1. RECIPIENT NAME AND ADDRESS (Including Zip Code)** | **4. AWARD NUMBER:** 1996-CV-VX-0042 |

The Pennsylvania Commission on Crime and Delinquency
P.O. Box 1167
Harrisburg, PA 17108-1167

**5. PROJECT PERIOD: FROM** 09/30/1996 **TO** 09/29/2005

**BUDGET PERIOD: FROM** 09/30/1996 **TO** 09/29/2005

**6. AWARD DATE** 09/30/2000

**7. ACTION** Supplemental

**1A. GRANTEE IRS/VENDOR NO.**

**8. SUPPLEMENT NUMBER** 08

**9. PREVIOUS AWARD AMOUNT** $ 62,771,577

**3. PROJECT TITLE**

Violent Offender Incarceration and Truth-in-Sentencing Incentive Formula Grant Program

**10. AMOUNT OF THIS AWARD** $ 15,273,763

**11. TOTAL AWARD** $ 78,045,340

**12. SPECIAL CONDITIONS**

THE ABOVE GRANT PROJECT IS APPROVED SUBJECT TO SUCH CONDITIONS OR LIMITATIONS AS ARE SET FORTH ON THE ATTACHED 2 PAGES.

**13. STATUTORY AUTHORITY FOR GRANT**

This project is supported under Violent Crime Control and Law Enforcement Act of 1994, as amended, Pub. L. 103-322

**15. METHOD OF PAYMENT**

LOCES

| AGENCY APPROVAL | GRANTEE ACCEPTANCE |
|---|---|
| **16. TYPED NAME AND TITLE OF APPROVING OJP OFFICIAL** | **18. TYPED NAME AND TITLE OF AUTHORIZED GRANTEE OFFICIAL** |
| Mary Lou Leary <br> Acting Assistant Attorney General | Richard Reeser <br><br> Director, Bur. of Program Development |
| **17. SIGNATURE OF APPROVING OJP OFFICIAL** | **19. SIGNATURE OF AUTHORIZED RECIPIENT OFFICIAL** <br> **19A. DATE** 10/25/00 |

| AGENCY USE ONLY | |
|---|---|
| **20. ACCOUNTING CLASSIFICATION CODES** | **21.** MU00B01048 |

| FISCAL YEAR | FUND CODE | BUD. ACT. | OFC. | DIV. REG. | SUB. | POMS | AMOUNT |
|---|---|---|---|---|---|---|---|
| X | B | S3 | 27 | 00 | 00 | 00 | 5813766 |
| X | B | S5 | 27 | 00 | 00 | 00 | 8964985 |
| X | V | S5 | 27 | 00 | 00 | 00 | 494871 |
| X | V | S3 | 27 | 00 | 00 | 00 | 141 |

OJP FORM 4000/2 (REV. 5-87) PREVIOUS EDITIONS ARE OBSOLETE.

OJP FORM 4000/2 (REV. 4-88)

APP. 57



| U.S. DEPARTMENT OF JUSTICE OFFICE OF JUSTICE PROGRAMS **Corrections Program Office** | **GRANT MANAGER'S MEMORANDUM, PT. I: PROJECT SUMMARY** **Grant** |
|---|---|
| | **PROJECT NUMBER** 1996-CV-VX-0042 |  **PAGE 1 OF 1** |

This project is supported under Violent Crime Control and Law Enforcement Act of 1994, as amended, Pub. L. 103-322

| 1. STAFF CONTACT (Name, address & telephone number) Matthew Hanson (800) 848-6325 | 2. PROJECT DIRECTOR (Name, address & telephone number) Jim Strader P.O. Box 1167 Harrisburg, PA 17108 - 1167 (717) 787-8559 Ext.3013 |
|---|---|

| 3a. TITLE OF THE PROGRAM Violent Offender Incarceration and Truth-in-Sentencing Incentive Formula Grant Program | 3b. POMS CODE (SEE INSTRUCTIONS ON REVERSE) 00 00 |
|---|---|

**4. TITLE OF PROJECT**

| 5. NAME & ADDRESS OF GRANTEE The Pennsylvania Commission on Crime and Delinquency P.O. Box 1167 Harrisburg, PA 17108-1167 | 6. NAME & ADRESS OF SUBGRANTEE |
|---|---|

| 7. PROGRAM PERIOD FROM:  09/30/1996  TO:  09/29/2005 | 8. BUDGET PERIOD FROM:  09/30/1996  TO:  09/29/2005 |
|---|---|
| 9. AMOUNT OF AWARD $ 15,273,763 | 10. DATE OF AWARD 09/30/2000 |
| 11. SECOND YEAR'S BUDGET | 12. SECOND YEAR'S BUDGET AMOUNT |
| 13. THIRD YEAR'S BUDGET PERIOD | 14. THIRD YEAR'S BUDGET AMOUNT |

**15. SUMMARY DESCRIPTION OF PROJECT (See instruction on reverse)**

This award represents a supplement to the fifth year of funding in the Violent Offender Incarceration/ Truth-In-Sentencing Incentive Grant Program. The program assists states in developing additional capacity for violent offenders through construction or lease of prison beds. Beginning with FY 1999 funding, the recipient may use up to ten percent of the VOI/TIS award for expenses associated with implementing a program of drug testing, intervention, and sanctions for incarcerated offenders or offenders under corrections supervision. The amount available for this purpose is: $1,641,349.40 from the FY 1999 award, plus $1,477,875.10 from this award, for a total of $3,119,224.50.

The Pennsylvania Commission on Crime and Delinquency (PCCD) will use grant funds to provide partial financing for the following two projects: 1) design and construction of a 39,000 square foot, Level Four housing unit at the State Regional Correctional Facility at Muncy; and 2) design and construction of a 39,000 square foot, Level Four housing unit at the State Correctional Facility at Dallas.

To date, Pennsylvania has received $62,771,577 in VOI/TIS funding, which is being used to partially fund the following five projects: 1) construction of a 148-bed expansion at the State Correctional Institution at Rockview; 2) security upgrades at the State Correctional Institution at Graterford; 3) construction of a housing unit and security upgrades at the State Regional Correctional Facility at Mercer; 4) construction of a housing unit at the State Correctional Institution at Greensburg; and 5) construction of a housing unit at the State Correctional Institution at Cresson. The PCCD may also use up to 10 percent of this award to expand usage of canine t

OJP FORM 4000/2 (REV. 4-88)

*APP. 58*

# Application Checklist

## Have You Included?
*(Please complete this checklist as part of your online submission.)*

### General Requirements (includes Tier 1 Funding Requirements)

■ Application for Federal Assistance form, SF-424. Applicants will complete the SF-424 online and will certify compliance with, or acceptance of, required certifications and assurances: (1) Assurance of Compliance with Program Statutory Requirements, which replaces both the Tier 1 Statutory Assurance and the certification, signed by the Governor, of the state's commitment to fully support, maintain, and operate facilities constructed with grant funds; (2) General Assurances; and (3) Certification Regarding Lobbying; Debarment, Suspension, and Other Responsibility Matters; and Drug Free Workplace Requirements. The text of all certifications and assurances is included in Appendix A of this document. It is no longer necessary to sign and return these forms.

■ A brief program narrative (5-10 pages). The program narrative should be prepared as a word processing file. It will be attached to the SF-424 and submitted online. The Grants Management System (GMS) will accept most word processing formats.

The narrative should include a description of:

- The planned use of the funds and, if known, the amount/percentage of anticipated VOI/TIS funds for FY 2000 that the state plans to allocate for offender drug testing and intervention programs. The description should include an explanation of how the expenditures will increase bed space for the confinement of violent offenders and how any funds used for offender drug testing and intervention programs are related to the implementation of the state's approved drug testing, intervention, and sanctions policies.

- How funds received in prior years are being used and the status of those projects.

- Activities related to implementation of the state's approved drug testing, sanctioning, and treatment policies and procedures.

- Any changes in the rights afforded victims of crime since the last application.

- How the program will be administered and the amount of funds to be used for this purpose.

- Information on related federal funding and activities.

### Violent Offender Program Requirements (Tiers 2 and 3)

__X___ **Place an "X" here if the state is applying for Violent Offender Incarceration Funds.** (Indicate type of funds requested.)

    _X__   State is applying for funds under Tier 2.

    _X__   State is applying for funds under Tier 3.

■ Completed Data for Determining Eligibility (DDE) form (found in Appendix B). This form will be completed and submitted online.

*(continued)*
*Truth-in-Sentencing Incentive Program Requirements*

App 59

**State/Territory:** Pennsylvania

## 2. First Releases of Sentenced Violent Prisoners During the Calendar Year — 1999

**A.** Number of Part 1 violent
prisoners released                                     1661

      or

Number of violent prisoners
released (using previously
approved definition)

**B.** Average total maximum
sentence length (in months)    *Minimum      56.45
(Exclude sentences of life or death)  Maximum     139.72

**C.** Average time served in prison
and jail (in months) by released
violent prisoners                                     79.70

➢                                          Is jail time included?      _X_ Yes   ___ No

➢ Have prisoners with
sentences of life or death
been excluded?              _X_ Yes   ___No

---

### Definitions and Coverage

| | |
|---|---|
| **Sentenced prisoners** | Report data only for prisoners with a total maximum sentence of more than 1 year. |
| **First Releases** | Report data only for prisoners released for the first time on the current sentence. Exclude persons who were previously released for the same offense, returned to prison and then released again. |
| **Part 1 violent crimes** | Include murder and non-negligent manslaughter, forcible rape, robbery, and aggravated assault as reported to the FBI for purposes of the Uniform Crime Reports. |
| **Total maximum sentence length** | Report the total maximum sentence to incarceration including all consecutive sentences. Do not assign numeric values to sentences of life or death. |

---

### Instructions

1  Report (in Item 2A) the number of Part 1 violent first releases in 1999. If you are unable to report the number released, write "DK" in the space provided.

2.  If you are unable to provide the number admitted for Part 1 violent first releases, use the same definition used in your previous application.

---

**Comments:**
*In Pennsylvania, the minimum sentence establishes the earliest possible parole date. Parole is discretionary at any time between expiration and minimum sentence and maximum sentence. This information also excludes first and second degree murders who must have a life or execution sentence (approximately 3500 currently in prison). Additionally, prisoners who have died or had their conviction or sentence overturned were excluded.

*App. 60*

**State/Territory:** Pennsylvani

**3.** **Violent prisoners covered under Truth-in-Sentencing Laws —**

|  |  | New court commitments, 1999 | First releases, 1999 |
|---|---|---|---|
| **A.** | Number violent prisoners | 1967 | 1661 |
| **B.** | Average total maximum sentence length (in months) (Exclude sentences of life or death) | Minimum 70.89 Maximum 158.52 | 56.45 139.72 |
| **C.** | Average time served in prison and jail (in months) | 70.89 | 79.70 |

➢                                  Is jail time included?     _X_ Yes
                                                    ___ No     _X_ Yes     ___ No

➢   Have prisoners with sentences of life or death been excluded?        _X_ Yes     ___ No      _X_ Yes     ___ No

---

**Definitions and Coverage**

---

| | |
|---|---|
| **Sentenced prisoners** | Report data only for prisoners with a total maximum sentence of more than 1 year. |
| **New court commitments** | Include persons entering prison directly from court and not from any unsuccessful period of community supervision. |
| **First Releases** | Report data only for prisoners released for the first time on the current sentence. Exclude persons who were previously released for the same offense, returned to prison and then released again. |
| **Violent prisoners** | Include prisoners admitted or released for murder and non-negligent manslaughter, forcible rape, robbery, and aggravated assault as reported to the FBI for purposes of the Uniform Crime Reports. If you used an approved, alternative definition in your application for FY 1999, use the same definition this year. |
| **Total maximum sentence length** | Report the total maximum sentence to incarceration including all consecutive sentences. Do not assign numeric values to sentences of life or death. |
| **Time served** | For admissions, report the average minimum time expected to be served before the prisoners will become eligible for first release. Include jail time, if available. For releases, report the actual average time served in prison and jail before first release. |

---

**Instructions**

---

1. If you are unable to report data for any item, write "DK" in the space provided.

---

**Comments:**

APP. 61

*Violent Offender Incarceration/Truth In Sentencing Grant*
*FY 2000 Application*
*Commonwealth of Pennsylvania*
*Planned Use of Funds & Project Status (Tier 1,2,3 and TIS Application)*

*Planned Use of Funds*

At the End of December 1999, the Pennsylvania Department of Corrections had a population of 36,384 inmates with a capacity of 25,228 and was operating at approximately 144% of the designed capacity. Since December 1998, operating capacity has decreased slightly but housing space for violent offenders continues to be an issue.

## Construction

If awarded, the Commonwealth will use VOI/TIS funding to construct a combination housing unit/classification center at the State Correctional Institution at Camp Hill. SCI Camp Hill serves as the Commonwealth's' only diagnostic and classification center for male inmates. In addition to inmate classification, this institution houses general population inmates.

Upon entry into the PA Department of Corrections, an inmate must be diagnosed and classified prior to being placed in general population. Until an inmate has completed the classification process, he/she remains at a custody level of four (CL-4). In Pennsylvania, this is the second highest level of custody and the majority of violent offenders fall into this classification. Currently, bed space for inmates participating in the classification process are spread throughout the institution and the classification and diagnosis on these inmates occurs in a separate area of the institution. Our plan consists of constructing a L-4 housing unit that will have approximately 250 beds with an adjacent classification center that will contain all elements of the classification/diagnostic process including offices, classrooms, testing rooms, medical exam rooms and other necessary offices that are solely used for classification purposes. This new housing unit/classification center is crucial in providing optimal institution security. It will limit inmate movement and help to control the spread of infectious diseases by containing unclassified inmates in one area of the prison. Once the new classification center is constructed, the L-4 beds that are currently being used to house unclassified inmates will be used to house violent offenders.

## Replacement Analysis of SCI Muncy and SCI Huntingdon

In 1999, there were two escape incidents from the PA Department of Corrections within days of each other at separate institutions. In an effort to ensure the safety and security of all state prisons, the Secretary of Corrections requested a team of corrections professionals, appointed by the Director of the American Correctional Association to assess all security systems, procedures and practices of the PA Department of Corrections.

In January of 2000, the PA Department of Corrections received the final report from the Performance and Security Panel. Among the recommendations put forth by the committee were: that the State Correctional Institution at Huntingdon and the State Correctional Institution at Muncy be considered for closure and that new prototypical prisons replace them. The Committee reported that the current facilities are not conducive to sound security standards for safe inmate movement and control and will continue to be a public safety risk despite ongoing corrective efforts.

Built in 1920, the State Correctional Institution at Muncy serves as the larger of two female correctional facilities in Pennsylvania. It also serves as the classification and diagnostic center for all female inmates. The majority of female violent offenders including capital cases are held at this Level Four (L-4) facility.

*App. 62*

**Violent Offender Incarceration/Truth In Sentencing Grant**
**FY 2000 Application**
**Commonwealth of Pennsylvania**
**Planned Use of Funds & Project Status (Tier 1,2,3 and TIS Application)**

### Project Status of Previous Awards

As of June 8, 2000, the Commonwealth of Pennsylvania has received VOI/TIS funds totaling $62,771,577. Currently, there are ten on-going construction projects using these funds. Approximately ten percent of FY 1999 funding ($1,823,720) will be used to expand the Department of Corrections' Drug Interdiction efforts. This will include adding twenty-six additional canine teams bringing the total number of teams to thirty-five. Funds will also be used to purchase twenty-five electronic drug detection devices, increasing the total number of devices to fifty-one. These devices will be used to detect the presence of controlled substances and explosives. The remaining portion of the 10% will be used to support twenty community correction center inpatient/non-hospitalized drug and alcohol treatment beds for community corrections center inmates and/or parolees in the Philadelphia area. The individuals will participate in intensive group and individual drug and alcohol therapy.

Listed below are the ten current VOI/TIS construction projects. The administrative approval process established for construction initiatives at the state level is lengthy and has contributed to a delay in projects getting started. Outreach efforts have been made to the authorizing agency (Department of General Services) at the executive level that serve to establish these projects as grant priorities and shorten the overall response time.

| Project | Description | Status as of June 1, 2000 |
|---|---|---|
| SCI Rockview DGS#571-25 | - Level 2 Housing Unit<br>- Kitchen and Dining<br>  Room Renovations<br>- Perimeter Security<br>  Upgrades | 7% Complete |
| SCI Graterford DGS# 577-24 | - Kitchen and Dining<br>  Room Renovations | 6% Complete |
| SCI Graterford DGS#577-27 | - Level 2 Housing Unit<br>  Fencing Upgrades | Final Design Completed. Awaiting Authorization to Bid for Construction |
| SCI Graterford DGS#577-28 | - Perimeter Upgrades | In Final Design Stage |
| SCRF Mercer DGS#1572-10 | - Level 3 Housing Unit<br>- Perimeter Upgrades<br>- Support Services | Advertising for Architectural / Engineering Design Firm |
| SCRF Mercer DGS#1572-09 | - Program and Support<br>- Building Upgrades | Advertising for Architectural / Engineering Design Firm |
| SCI Cresson DGS#1574-5 | - Level 4 Housing Unit | Advertising for Architectural / Engineering Design Firm |
| SCI Greensburg DGS#1570-8 | - Level 4 Housing Unit | Advertising for Architectural / Engineering Design Firm |
| SCI Muncy | - Level 4 Housing Unit | Approved by PCCD on June 8, 2000. No Activity as of Yet. |
| SCI Dallas | - Level 4 Housing Unit | Approved by PCCD on June 8, 2000. No Activity as of Yet. |

App. 63

# Application Checklist
# Tier 2, Tier 3, and Truth-in-Sentencing Funding

## Have You Included?
***(Please complete this checklist as part of your online submission.)***

This application will be designated as a supplement to the Tier 1 award. It is not necessary to file an additional SF-242. All assurances, statements, and program descriptions included in the Tier 1 application apply to this supplement.

### *Violent Offender Program Requirements (Tiers 2 and 3)*

☒ **Check box if the state is applying for Violent Offender Incarceration Funds.** (Indicate type of funds requested.)

    ☒ State is applying for funds under Tier 2.
    ☒ State is applying for funds under Tier 3.

☒ Online submission of the Data for Determining Eligibility (DDE) form (found in Appendix B).

### *Truth-in-Sentencing Incentive Program Requirements*

☒ **Check box if the state is applying for Truth-in-Sentencing funds.** (Please check "Determinate" or "Indeterminate" to specify the state's sentencing structure, and then check the Truth-in-Sentencing criteria under which the state qualifies for funding.)

☐ **Determinate Sentencing State**

☐ The state has implemented Truth-in-Sentencing laws that require persons convicted of a Part 1 violent crime to serve not less than 85 percent of the sentence imposed.

☐ The state has implemented Truth-in-Sentencing laws that result in persons convicted of a Part 1 violent crime serving on average not less than 85 percent of the sentence imposed.

☐ The state has enacted, but not yet implemented, Truth-in-Sentencing laws that require the state, not later than 3 years after it submits its original Truth-in-Sentencing application for funds, to provide that persons convicted of a Part 1 violent crime serve not less than 85 percent of the sentence imposed. [Note: This requires that the qualifying state must implement the law(s) within 3 years of submitting its original application in order to retain the grant funds.]

☒ **Indeterminate Sentencing State**

☒ The state can demonstrate that persons convicted of a Part 1 violent crime on average serve not less than 85 percent of the prison term established under the state's sentencing and release guidelines.

☐ The state can demonstrate that persons convicted of a Part 1 violent crime on average serve not less than 85 percent of the maximum prison term allowed under the sentence imposed by the court.

(continued on reverse)

*APP. 64*

☒  **Check box if the applicant state qualified for Truth-in-Sentencing in FY 2000:**

☐  Check the box if there have been changes and provide a description of any changes to Truth-in-Sentencing legislation, guidelines, or practices.

☒  Please check here **if there have been no changes** in the legislation, guidelines, and/or practices, as provided and described in your previous application, that affect how violent offenders are sentenced and the percentage of sentence served.

☐  **If applying for the first time as a determinate sentencing state,** a copy of legislation, guidelines, or other supporting information which demonstrates the state's compliance with the Truth-in-Sentencing requirements as defined in the Program Guidance and Application Kit.

☐  **If applying for the first time as an indeterminate sentencing state,** documentation to show that the state practiced indeterminate sentencing on April 26, 1996 and met the eligibility criteria as of that date.

☒  **All Truth-in-Sentencing applicants must provide** supporting data as described in this kit, if applicable. Supporting materials should be submitted electronically if at all possible. If you cannot submit materials electronically, contact your OJP/CPO grant manager prior to submitting by mail.

**Deadline:**          **July 1, 2001**

**Questions:**          For questions regarding GMS, call the GMS hotline at (888) 549-9901.

For questions regarding the program or application content, contact OJP/CPO at (800) 848-6325.

APP 65

U.S. Department of Justice
Office of Justice Programs
Corrections Program Office
810 Seventh Street, NW
Washington, DC 20531

Data for Determining Eligibility for
Violent Offender Incarceration and
Truth-In-Sentencing Grants
Fiscal Year 2001

State/Territory: __PA_____

General Information

Eligibility requirements

Data will be used to determine eligibility for Fiscal Year 2000 Violent Offender Incarceration grants under Section 20103, paragraph (b) and (c), and for Truth-In-Sentencing Incentive Grants under Section 20104, paragraph (a).

Part 1 violent crime

Section 20101 and 20105 provide the definition of 'Part 1 violent crime' to be used in completing this form.  Part 1 violent crime means murder and non-negligent manslaughter, forcible rape, robbery, and aggravated assault as reported to the Federal Bureau of Investigation for purposes of Uniform Crime Reports, or a reasonably comparable class of serious violent crimes as approved by the Attorney General.  If you applied for funding in FY 2000 and used an approved, alternative definition, use the same definition for this year.

Technical assistance

If you need assistance in completing this form, call the Corrections staff at the Bureau of Justice Statistics at (202) 633-3000.  For other assistance in completing the application, call the Corrections Technical Assistance Line at (800) 848-6325.

Data accuracy

When you have completed this form, certify the accuracy of the reported data by providing a signature from an approving official.

Data Supplied By                           Data Approved By


NAME James Schaefer

                                           NAME Doug Hoffman


TITLE Information and Publications
      Manager, PA Dept of Corrections      TITLE Manager, Evaluation, Research, &
                                                 Statistics Division, PCCD

PHONE (area code, number, ext.)
      (717) 730-2770                              SIGNATURE
                                           DATE 6/22/01

APP. 66

State/Territory:

1.    New Court Commitments of Sentenced Violent Prisoners During the Calendar Year

2000

A.    Number of sentenced persons
admitted to prison for Part 1                    1867
violent crimes

or

B.    Total number of sentenced
persons admitted for violent
crimes

Definitions and Coverage

Sentenced prisoners
Report data only for prisoners with a total maximum sentence of more than 1 year.

New court commitments
Include persons entering prison directly from court and not from any unsuccessful period of community supervision.

Part 1 violent crimes
Include murder and non-negligent manslaughter, forcible rape, robbery, and aggravated assault as reported to the FBI for purposes of the Uniform Crime Reports.

Total violent crimes
Use the definition that was approved for your previous application.

Instructions

Report (in Item 1A) the number of sentenced persons admitted to prison for Part 1 violent crimes in 2000.

If you are unable to provide the number admitted for Part 1 violent crimes, write "DK" in the spaces provided (in Item 1A) and report data for Item 1B.

Comments:

APP. 67

State/Territory:

2.  First Releases of Sentenced Violent Prisoners During the Calendar Year

2000

    A.  Number of Part 1 violent
    prisoners released                       1599

            or

    Number of violent prisoners
    released (using previously
    approved definition)

    B.  Average total maximum         Min.  57.04
    sentence length (in months)    Max.  141.02
    (Exclude sentences of life or death)

    C.  Average time served in prison
    and jail (in months) by released    79.61
    violent prisoners

                Is jail time included?  **Yes**    No

                Have prisoners with
                sentences of life or death
                been excluded?    **Yes**    No

Definitions and Coverage

Sentenced prisoners
Report data only for prisoners with a total maximum sentence of more than
1 year.

First Releases
Report data only for prisoners released for the first time on the current
sentence.  Exclude persons who were previously released for the same
offense, returned to prison and then released again.

Part 1 violent crimes
Include murder and non-negligent manslaughter, forcible rape, robbery, and
aggravated assault as reported to the FBI for purposes of the Uniform Crime
Reports.

Total maximum
sentence length
Report the total maximum sentence to incarceration including all consecutive
sentences.  Do not assign numeric values to sentences of life or death.

App. 68

Instructions

Report (in Item 2A) the number of Part 1 violent first releases in 2000.  If you are unable to report the number
released, write "DK" in the space provided.

If you are unable to provide the number admitted for Part 1 violent first releases, use the same definition used in
your previous application.

Comments: *In Pennsylvania, the minimum sentence establishes the earliest possible parole date.  Parole is discretionary at any time between expiration of minimum and maximum sentence.  This information also excludes first and second degree Murders who must have a life or execution sentence (approximately 3600 currently in Prison).

Additionally, prisoners who have died or had their conviction or sentence overturned were excluded.

State/Territory:

3.   Violent prisoners covered under Truth-in-Sentencing Laws

2000 New court commitments,  First releases

A.   Number violent prisoners              1867              1599

B.   Average total maximum           Min.  68.32         57.04
     sentence length (in months)     Max. 152.85         141.02
     (Exclude sentences of life or death)

C.   Average time served in prison       68.32              79.61
     and jail (in months)

Is jail time included?  **Yes**   No

Have prisoners with sentences of life or death been excluded?
**Yes**   No

Definitions and Coverage

Sentenced prisoners

*APP. 69*

Report data only for prisoners with a total maximum sentence of more than
1 year.

New court commitments
Include persons entering prison directly from court and not from any
unsuccessful period of community supervision.

First Releases
Report data only for prisoners released for the first time on the current
sentence.  Exclude persons who were previously released for the same
offense, returned to prison and then released again.

Violent prisoners
Include prisoners admitted or released for murder and non-negligent
manslaughter, forcible rape, robbery, and aggravated assault as reported to
the FBI for purposes of the Uniform Crime Reports.  If you used an approved,
alternative definition in your application for FY 2000, use the same definition
this year.

Total maximum
sentence length
Report the total maximum sentence to incarceration including all consecutive
sentences.  Do not assign numeric values to sentences of life or death.

Time served
For admissions, report the average minimum time expected to be served
before the prisoners will become eligible for first release.  Include jail time, if
available.  For releases, report the actual average time served in prison and
jail before first release.

Instructions

If you are unable to report data for any item, write "DK" in the space provided.

Comments:

App. 70

## TRUTH-IN-SENTENCING ELIGIBILITY

As a state with indeterminate sentencing and guidelines which are used to establish a minimum sentence which determines parole/release eligibility, Pennsylvania continues to be eligible for a Truth-in-Sentencing grant. Pennsylvania has a long-standing tradition of truth-in-sentencing, including life sentences. A life prisoner in Pennsylvania can only be paroled if he receives a commutation of that sentence from the Governor.

Pennsylvania has a minimum and maximum sentencing structure. This structure is indeterminate in that once the offender has served his minimum under incarceration, he becomes eligible for parole. However, that parole is discretionary, and under current policy, unlikely to be granted at minimum for **violent** offenders. In BJA's report, **National Assessment of Structured Sentencing,** February 1996, Pennsylvania's sentencing structure is described as indeterminate with a footnote that is partially determinate. The part that is determinate is the part that guarantees that Part 1 violent offenders sentenced to prison in Pennsylvania will serve at least 100% of their minimum sentence established under guidelines or mandatory statutes. Additional descriptive information concerning Pennsylvania's sentencing structure may be found in the October 4, 1996 letter from the Executive Director, Pennsylvania Commission on Sentencing, to the Corrections Program Office (Appendix A).

Whether the minimum sentence is established by the guidelines or mandatory statutes, the court has the authority to establish a sentence based on a range defined in statute. The statutory limit within the law refers to the maximum sentence and the minimum sentence cannot exceed one-half of the maximum sentence. The mandatory minimum sentence laws obviously limit that range by raising the lower limit of the range. However, nothing in the mandatory provisions precludes the court from imposing a longer sentence as long as it is within the range allowable for that offense. The guidelines establish a presumptive range for the minimum sentence based on the seriousness of the current offense and the offender's prior record. The guidelines also include alternative presumptive ranges based on either aggravating or mitigating circumstances if the court finds such circumstances exist. The court also has authority to sentence outside of the presumptive ranges provided the reasons for the departure are specified. Additionally, there are provisions for sentence enhancements based on the use of a deadly weapon or the distribution of a controlled substance to a juvenile or within 1,000 feet of a school.

Once the sentence has been imposed by the court, the parole authority for that offender lies with a separate administrative agency, the Pennsylvania Board of Probation and Parole. The Board has no authority to release offenders prior to the completion of their minimum sentence. They do, however, have absolute release authority at any time between the expiration of the minimum sentence and the expiration of the maximum sentence. The presumptive guidelines used by the court not only set the minimum release date which controls when the Board may consider an offender for parole, but are also used in release consideration. If the minimum sentence imposed is less than the presumptive sentence range, the Board will give careful consideration as to why the court imposed such a sentence and may consider it a negative factor in the release decision. As a result of changes in Board membership, the current Board has not yet formalized many of

*AdP  71*

the policy revisions they adopted as part of a major overhaul of Board policy. They are currently involved in a project to formalize much of that policy by developing official decision making guidelines.

The fact that no offender receiving a state prison sentence can be paroled prior to the completion of his or her minimum sentence, is precisely why Pennsylvania has truth-in-sentencing. The sentence imposed by the court must be served. Pennsylvania has no good time or other provision to allow parole release prior to the expiration of that sentence.

The only exception to the application of sentencing guidelines for Part 1 violent offenders is that some of these offenders are subject to mandatory sentences based primarily on a prior record or the use of a firearm in the commission of the offense. However, the requirement that the offender serve his minimum sentence remains and those offenders cannot be paroled prior to expiration of the minimum sentence. As a result of recent revisions of the sentencing guidelines, the majority of mandatory minimum sentences are within the presumptive range of the guidelines and longer sentences may be imposed under the guidelines. The mandatories have made compliance with guidelines mandatory for certain violent offenses instead of simply establishing presumptive ranges. A summary of the changes in the sentencing guidelines, which took effect on June 13, 1997, is contained in Appendix B.

The following table shows the number of Part 1 violent offenders released from prison for 1994 through 2000 and the total average percent of minimum sentence served by those offenders. The percent of minimum excludes lifers and capital cases in that they are not released, prisoners who have died, or prisoners who have had their sentence and/or conviction overturned on appeal.

### AVERAGE PERCENT OF MINIMUM SENTENCE SERVED FOR PART 1 VIOLENT OFFENDERS RELEASED FROM PA DOC 1994-2000

|  | 1994 | 1995 | 1996 | 1997 | 1998 | 1999 | 2000 |
|---|---|---|---|---|---|---|---|
| Number of Releases | 1,069 | 522 | 563 | 1,300 | 1,210 | 1,661 | 1,599 |
| Percent of Minimum Served | 113.5% | 122.5% | 125.5% | 144.3% | 129.3% | 141.1% | 139.6% |

As part of our effort to monitor Pennsylvania's continuing compliance with truth-in-sentencing, we will provide the above statistics for future years as they become available. However, the percent of minimum sentence served is very likely to increase as the effects of new parole policies are felt and without a major change in statute, the percent of minimum ser ed cannot fall below 100% for any individual violent offender, and therefore the average percentage will always exceed 100%.

APP. 72

FY 2001 Violent Offender Incarceration and Truth-in-Sentencing Incentive Formula Grant... Page 1 of 1

 **FY 2001 Violent Offender Incarceration and Truth-in-Sentencing Incentive Formula Grant Program** 2001-Y0066-PA-CV 

<u>Application</u>    <u>Award</u>    <u>Reporting</u>    <u>Payments</u>    <u>Correspondence</u>    | Switch to ...    ▼ |

**Application Handbook** **Applicant Information**

<u>Overview</u>

<u>Applicant Information</u>

<u>Project Information</u>

<u>Budget and Program Attachments</u>

<u>Assurances and Certifications</u>

<u>Review SF 424</u>

<u>Submit Application</u>

| | |
|---|---|
| *Is the applicant delinquent on any federal debt | No |
| *Employer Identification Number (EIN) | ██████████ |
| *Type of Applicant | State |
| Type of Applicant (other): | |
| *Organizational Unit | Community Corrections Division |
| *Legal Name (Legal Jurisdiction Name) | The Pennsylvania Commission On Crime And Delinquency |
| *Address 1 | P.O. Box 1167 |
| Address 2 | |
| *City | Harrisburg |
| County/Parish | Dauphin |
| *State | Pennsylvania |
| *ZIP | 17108-1167 |
| Name and telephone number of the person to be contacted on matters involving this application | |
| First Name | Richard |
| Last Name | Reeser |
| Phone Number | (717) 787-8559 |

<u>Help/Frequently Asked Questions</u>

| Continue |
|---|

<u>GMS Home</u>

<u>Log Off</u>

APP. 73

 

# FY 2001 Violent Offender Incarceration and Truth-in-Sentencing Incentive Formula Grant Program  2001-Y0066-PA-CV

**Application**    **Award**    **Reporting**    **Payments**    **Correspondence**    | Switch to ... ▾ |

**Application Handbook**  **Project Information**

Overview

Applicant Information

Project Information

Budget and Program Attachments

Assurances and Certifications

Review SF 424

Submit Application

Help/Frequently Asked Questions

GMS Home

Log Off

| Descriptive Title of Applicant's Project | | |
|---|---|---|
| Violent Offender Incarceration/Truth-in-Sentencing | | |
| Areas Affected by Project | | |
| Statewide | | |
| Proposed Project | | |
| | *Start Date | January/ 01/ 2001 |
| | *End Date | September/ 30/ 2005 |
| *Congressional Districts of | | |
| | Project | Congressional District 01, PA |
| | | Congressional District 02, PA |
| | | Congressional District 03, PA |
| | | Congressional District 04, PA |
| | | Congressional District 05, PA |
| | | Congressional District 06, PA |
| | | Congressional District 07, PA |
| | | Congressional District 08, PA |
| | | Congressional District 09, PA |
| | | Congressional District 10, PA |
| | | Congressional District 11, PA |
| | | Congressional District 12, PA |
| | | Congressional District 13, PA |
| | | Congressional District 14, PA |
| | | Congressional District 15, PA |
| | | Congressional District 16, PA |
| | | Congressional District 17, PA |
| | | Congressional District 18, PA |
| | | Congressional District 19, PA |
| | | Congressional District 20, PA |
| | | Congressional District 21, PA |

| *Estimated Funding | |
|---|---|
| Federal | $ 1389635 .00 |
| Applicant | $ 0 .00 |
| State | $ 154404 .00 |
| Local | $ 0 .00 |
| Other | $ 0 .00 |
| Program Income | $ 0 .00 |
| TOTAL | $ 1544039 .00 |

Continue

*APP. 74*

 **FY 2001 Violent Offender Incarceration and Truth-in-Sentencing Incentive Formula Grant Program** 2001-Y0066-PA-CV 

Application    Award    Reporting    Payments    Correspondence    | Switch to ...            ⌄ |

**Application Handbook Budget and Program Attachments**

Overview

Applicant Information

Project Information

Budget and Program Attachments

Assurances and Certifications

Review SF 424

Submit Application


Help/Frequently Asked Questions

GMS Home

Log Off

This form allows you to view the Budget Detail Worksheet, Program Narrative and other Program attachments. Click the View button to continue.

| Budget Detail Worksheet | View | |
|---|---|---|
| Program Narrative | View | |
| Other Program Attachments | View | |

Continue

*APP. 75*

Planned Use of Funds

The Commonwealth of Pennsylvania is applying for Tier 1 2001 VOI/TIS funds in the amount of $1,389,635. The required state contribution is $154,404. The total Tier 1 budget is $1,544,039. The grant guidelines allow applicants to spend up to 10% of funding costs associated with drug treatment, sanctioning, and intervention. Pennsylvania will use the maximum allowable amount for drug treatment initiatives.

Construction

Approximately 59% of Pennsylvanian's total FY 2001 award will be used to construct a level-four housing unit with an adjacent classification/diagnostic center at the State Correctional Institution at Camp Hill. SCI Camp Hill serves as the Commonwealth's only diagnostic and classification center for male inmates. In addition to classifying inmates that will be sent to other state correctional institutions, this institution also holds general population inmates.

Upon entry to the Pennsylvania Department of Corrections (DOC), an inmate must be diagnosed and classified prior to being placed in general population. The overall diagnostic and classification process occurs over a four to six week period. During this period, reception center staff perform the following functions: (1) reviews identification of the committing authority and the newly committed individual, (2) searches the inmate for contraband, (3) performs an initial medical screening (including physical and psychological), (4) determines the inmates appropriate custody level (1 – 5) and (5) develops a Prescriptive Program Plan for the inmate that identifies problem areas and treatment needs to be addressed during incarceration.

Until an inmate has completed the classification process, he/she is classified at a custody-level four. In Pennsylvania, this is the second highest level of custody and the majority of violent offenders are placed into this custody category. Currently, bed space for inmates participating in the classification/diagnostic is spread throughout the institution and the classification and diagnostic processes occur in separate areas of the facility.

DOC's plan consists of constructing a level-four housing unit that will have approximately 230 beds with an adjacent classification center that will contain all elements of the classification/ diagnostic process including offices, classrooms, testing rooms, medical exam rooms and other necessary offices that are solely used for classification/diagnostic purposes. This new level-four housing unit/classification center is crucial in providing optimal institution security. This project will help to limit inmate movement and help to control the spread of infectious diseases by containing unclassified inmates in one area of the prison. Once the level-four housing/ classification center is constructed, the level-four beds that are currently used to house unclassified inmates will be used to hold violent offenders.

DOC plans on using approximately 12% of construction funds to expand the restricted housing unit at SCI Rockview. SCI Rockview is a general population male facility located in the central region of the state. VOI/TIS funding will be used to add an additional 30 beds to the existing restricted housing unit. This project will enhance institutional security by expanding the capacity to isolate and contain violent and disruptive inmates.

App. 76

The remaining 19% of construction funds will be added to two previously approved VOI/TIS projects, a level-four housing unit at SCI Greensburg (DGS# 1570-8) and a level-four housing unit at SCI Cresson (DGS#1574-5). Construction costs have increased from the projected amounts originally allocated in the grant. Therefore, DOC plans on using 2001 VOI/TIS funds to cover additional construction costs for both projects.

The grant guidelines allow applicants to spend up to 10% of the VOI/TIS award for costs associated with drug treatment, sanctioning and intervention. Pennsylvania will use the maximum allowable amount for drug treatment initiatives.

Drug Treatment
DOC holds that addiction to alcohol and other drugs is a complex, primary physiological disease and is neither a primary behavior disorder nor a symptomatic manifestation of any other disease or process. The philosophy is grounded in recent and continuing research into the genetic biochemical and physiological aspects of the effect of alcohol and other drugs on individuals and families. While DOC subscribes to a holistic health model for the disease of addiction, it advocates personal responsibility and accountability for the inmates' past behavior. Therefore, it is the view of DOC that inmates are personally responsible for pursuing their own recovery.

In 1998, the Center for Public Policy at Temple University was awarded a one-year competitive Partnership Grant for $160,000 from the National Institute of Justice. Temple University undertook a comprehensive, descriptive survey of all DOC alcohol and other drug treatment programs. They also conducted an intensive and in-depth process evaluation of all alcohol and other drug treatment programs at two state correctional institutions. From this process evaluation, Temple University concluded that the therapeutic community model is the only type of alcohol and other drug treatment program that has a reasonable expectation of having a measurable impact on the inmate. Therefore, Temple University recommended that DOC expand the number of therapeutic community services offered to inmates. Further, it was recommended that DOC staff concentrate on facilitating the therapeutic community and that outpatient services within the facility be contracted out to a vendor.

DOC agreed with Temple University's recommendations and plans on using VOI/TIS funding to help reach the goal of providing additional therapeutic community services to more inmates. DOC plans to use a portion of the drug treatment funding to support Institutional Aftercare for four new therapeutic communities at SCI Frackville, SCI Retreat, SCI Mercer and SCI Waynesburg. By contracting for outpatient services, DOC staff will be able to facilitate the therapeutic communities.

Therapeutic communities are residential drug treatment programs where inmates are housed in a separate unit in the facility. The therapeutic community model views addiction as a disorder of the whole person, reflecting problems in conduct, attitude, values, moods and emotional management. This in consistent with the holistic health model of the addiction adopted by DOC. Institutional aftercare is provided as a means of offering continuity of care for those inmates who have completed institutional programs. The alcohol and other drug institutional aftercare services component will allow the inmate to continue to work on and develop areas necessary to establish affective, cognitive and behavioral changes that will reinforce and enhance a positive program of recovery. Funding will be used to contract with a vendor to provide outpatient services at four therapeutic communities for a three-year period.

APP·77

Funding will also be used to provide alcohol and other drug education services to inmates in all state correctional institutions. At any given time there are more than 12,000 inmates participating in alcohol and other drug education programs in all state correctional institutions. Alcohol and other drug education is designed to provide participants with an education on the physical, psychological, social, emotional behavioral, environmental and sociopolitical dimensions of alcohol and other drug abuse. The educational approach will take into account the inmates reading level and cognitive skills, as well as cultural and gender differences. Funding will be used to purchase workbooks and films that will be used during alcohol and other drug treatment education.

Project Status of Previous Awards
Through the federal FY 2000 award, Pennsylvania has received VOI/TIS funds totaling $62,771,577. Currently, there are nine on-going construction projects using VOI/TIS funds. Approximately 10% of FY 1999 funding ($1,823,720) is being used to expand the DOC's Drug Interdiction efforts. This includes adding 26 additional canine teams bringing the total number of teams to 35. Funds will also be used to purchase 25 electronic drug detection devices, bringing the total number of devices to 51. These devices will be used to detect the presence of controlled substances and explosives. The remaining portion of the 10% was originally designated to be used for 20 drug and alcohol detoxification beds.

DOC has submitted a Project Modification Request to The Pennsylvania Commission on Crime and Delinquency (PCCD) to eliminate the level-four housing unit at SCI Dallas and use the funding to construct a level-four housing unit at SCI Laurel Highlands to hold violent offenders with medical needs. The approved number of cells for the level-four housing unit at SCI Dallas was 128. The level-four housing unit at SCI Laurel Highlands will also have 128 cells.

DOC has also requested to modify the use of a portion of the 10% of funds allowable for drug testing, sanctioning and treatment. The original approved project was to use a portion of VOI/TIS funds for 20 in-patient/non-hospitalized drug and alcohol detoxification beds. These beds were designed to be short-term, intensive detoxification units that would deal with the chemical and physical ramifications of alcohol and other drug dependencies. DOC is now requesting that instead of using the funds for detoxification beds, to use the funding to contract with a vendor(s) to provide outpatient support services for four new therapeutic communities (SCRF Mercer, SCI Waynesburg, SCI Frackville and SCI Retreat) as well as to provide follow-up services in the community. DOC staff will operate the inpatient portion of the therapeutic communities. The contracted outpatient services in the institutions will include AOD Education, Dual Diagnosis Groups, Relapse Prevention Groups, Group Counseling and Reentry Preparation. Funding will also be used to purchase standardized alcohol and other drug (AOD) curriculum that will be used for inmates utilizing AOD treatment services in all state correctional institutions.

Listed below are the approved VOI/TIS construction projects and the SCI Laurel Highlands project that is pending approval from PCCD. The project that is pending approval from PCCD is highlighted. The administrative approval process established for construction initiatives at the state level is lengthy and has contributed to a delay in projects getting started. Outreach efforts have been made to the authorizing agency (Department of General Services) at the executive level that serve to establish these projects as grant priorities and shorten the overall response time.

APP 78