# Statutory Assurance

# Violent Offender Incarceration Program--Tier 1

The State/Territory of __Pennsylvania__ assures that it has implemented, or will implement, correctional policies and programs, including Truth-in-Sentencing laws that ensure that violent offenders serve a substantial portion of the sentences imposed, that are designed to provide sufficiently severe punishment for violent offenders, including violent juvenile offenders, and that the prison time served is appropriately related to the determination that the inmate is a violent offender and for a period of time deemed necessary to protect the public.

__Richard D. Reeser__
**Certifying Official**

__Director, Bureau of Program Develop__
**Title**

_[signature]_
**Signature**

__8-14-96__
**Date**

EXHIBIT V

# U.S. DEPARTMENT OF JUSTICE
## OFFICE OF JUSTICE PROGRAMS

# GRANT MANAGER'S MEMORANDUM, PT. I: PROJECT SUMMARY

| | |
|---|---|
| ☒ OJP  ☐ BJA  ☐ OJJDP<br>☐ BJS  ☐ NIJ  ☐ OVC<br>CHECK APPROPRIATE BOX | ☒ GRANT  ☐ COOPERATIVE AGREEMENT<br>PROJECT NUMBER<br>96-CV-VX-0042 |

☐ This project is supported under Title I of the Omnibus Crime Control and Safe Streets Act, 42 USC 3701, as amended.

☐ This project is supported under the Juvenile Justice and Delinquency Prevention Act of 1974, as amended.

☒ Other: Violent Crime Control and Law Enforcement Act of 1994, as amended, Pub. L. 103-322

**1. STAFF CONTACT** (Name, address & telephone number)
Carla A. Daniels, Grant Manager
OJP Corrections Program Office
633 Indiana Avenue, N.W.
Washington, DC 20531
(800)848-6325

**2. PROJECT DIRECTOR** (Name, address & telephone number)
James Thomas, Executive Director
Pennsylvania Commission on Crime and Delinquency
P.O. 1167
Harrisburg, PA 17108-1167
(717)787-8559

**3a. TITLE OF THE PROGRAM**
FY96 Violent Offender Incarceration and Truth-in-Sentencing Incentive Grant Program

**3b. POMS CODE** (SEE INSTRUCTIONS ON REVERSE)

**4. TITLE OF PROJECT**
Pennsylvania VOI-TIS Grant

**5. NAME & ADDRESS OF GRANTEE**
Pennsylvania Commission on Crime and Delinquency
P.O. 1167
Harrisburg, PA 17108-1167

**6. NAME & ADDRESS OF SUBGRANTEE**

**7. PROGRAM PERIOD**
FROM: 09/30/96 TO: 09/29/01

**8. BUDGET PERIOD**
FROM: 09/30/96 TO: 09/29/01

**9. AMOUNT OF AWARD**
$ 1,248,453.00

**10. DATE OF AWARD**
September 20, 1996

**11. SECOND YEAR'S BUDGET**
N/A

**12. SECOND YEAR'S BUDGET AMOUNT**
N/A

**13. THIRD YEAR'S BUDGET PERIOD**
N/A

**14. THIRD YEAR'S BUDGET AMOUNT**
N/A

**15. SUMMARY DESCRIPTION OF PROJECT** (See instruction on reverse)

The Pennsylvania Commission on Crime and Delinquency has designated the state's Department of Corrections as the recipient of funds to initiate five projects with this initial prison construction grant. A 150 bed expansion project at the Rockview institution involves construction of four dormitory housing units for adult violent offenders. Two dormitory expansion projects are planned for housing violent offenders at the Graterford and Mercer facilities adding 150 beds at each site. Additional construction sites are the Forest and Indiana institutions, targeted for 1000 and 250 cell expansions respectively, for violent juvenile offenders.

Pennsylvania sentencing and parole policies, the state's presumptive sentencing guidelines and the reported increase in time served by violent offenders are factors prompting the Commission's construction request.

Full funding of the Pennsylvania construction projects is predicated on the state's qualifying for supplemental grants under the progressive requirements of the Violent Offender Incarceration and Truth In Sentencing Incentive Grants Program.

aca/acf

OJP FORM 4000/1 (REV. 4-88)

EXHIBIT ✓

OMB Approval No. 0348-0043

# APPLICATION FOR FEDERAL ASSISTANCE

| 2. DATE SUBMITTED | Applicant Identifier |
|---|---|
| 8/14/96 | |

**1. TYPE OF SUBMISSION:**

Application
- [X] Construction
- [ ] Non-Construction

Preapplication
- [ ] Construction
- [ ] Non-Construction

| 3. DATE RECEIVED BY STATE | State Application Identifier |
|---|---|
| | |
| 4. DATE RECEIVED BY FEDERAL AGENCY | Federal Identifier |
| | |

**5. APPLICANT INFORMATION**

Legal Name: Pennsylvania Commission on Crime and Delinquency

Organizational Unit:

Address (give city, county, state, and zip code):
P.O. Box 1167
Harrisburg, PA  17108-1167
Dauphin County

Name and telephone number of the person to be contacted on matters involving this application (give area code)
Richard D. Reeser
(717) 787-8559

**6. EMPLOYER IDENTIFICATION NUMBER (EIN):** [redacted]

**7. TYPE OF APPLICANT:** (enter appropriate letter in box) **A**

- A. State
- B. County
- C. Municipal
- D. Township
- E. Interstate
- F. Intermunicipal
- G. Special District
- H. Independent School Dist.
- I. State Controlled Institution of Higher Learning
- J. Private University
- K. Indian Tribe
- L. Individual
- M. Profit Organization
- N. Other (Specify): _____

**8. TYPE OF APPLICATION:**

- [X] New
- [ ] Continuation
- [ ] Revision

If Revision, enter appropriate letter(s) in box(es): [ ] [ ]

- A. Increase Award
- B. Decrease Award
- C. Increase Duration
- D. Decrease Duration
- Other (specify): _____

**9. NAME OF FEDERAL AGENCY:**
Office of Justice Programs

**10. CATALOG OF FEDERAL DOMESTIC ASSISTANCE NUMBER:** 16.586

TITLE: Violent Offender Incarceration and Truth-In-Sentencing Incentive Grants

**11. DESCRIPTIVE TITLE OF APPLICANT'S PROJECT:**
1) Violent Offender Incarceration and Truth-In-Sentencing Grants
2) Department of Agriculture
3) July 1 to June 30

**12. AREAS AFFECTED BY PROJECT** (cities, counties, states, etc.):
Statewide

**13. PROPOSED PROJECT:**

| Start Date | Ending Date |
|---|---|
| 10/1/96 | 9/30/2000 |

**14. CONGRESSIONAL DISTRICTS OF:**

| a. Applicant | b. Project |
|---|---|
| All | All |

**15. ESTIMATED FUNDING:**

| | |
|---|---|
| a. Federal | $ .00 |
| b. Applicant | $ .00 |
| c. State | $ .00 |
| d. Local | $ .00 |
| e. Other | $ .00 |
| f. Program Income | $ .00 |
| g. TOTAL | $ .00 |

**16. IS APPLICATION SUBJECT TO REVIEW BY STATE EXECUTIVE ORDER 12372 PROCESS?**

a. YES. THIS PREAPPLICATION/APPLICATION WAS MADE AVAILABLE TO THE STATE EXECUTIVE ORDER 12372 PROCESS FOR REVIEW ON:

DATE _____

b. NO. [X] PROGRAM IS NOT COVERED BY E.O. 12372

[ ] OR PROGRAM HAS NOT BEEN SELECTED BY STATE FOR REVIEW

**17. IS THE APPLICANT DELINQUENT ON ANY FEDERAL DEBT?**

[ ] Yes   If "Yes," attach an explanation.   [X] No

**18. TO THE BEST OF MY KNOWLEDGE AND BELIEF, ALL DATA IN THIS APPLICATION/PREAPPLICATION ARE TRUE AND CORRECT, THE DOCUMENT HAS BEEN DULY AUTHORIZED BY THE GOVERNING BODY OF THE APPLICANT AND THE APPLICANT WILL COMPLY WITH THE ATTACHED ASSURANCES IF THE ASSISTANCE IS AWARDED**

| a. Typed Name of Authorized Representative | b. Title | c. Telephone number |
|---|---|---|
| Richard D. Reeser | Director, Bureau of Program Development | (717) 787-8559 |

d. Signature of Authorized Representative: *[signature]*

e. Date Signed: 8-14-96

Previous Editions Not Usable

Standard Form 424 (REV 4-88)
Prescribed by OMB Circular A-102

### Attachment to Statutory Assurance-Violent Offender Incarceration Program--Tier 1

Unlike many other states, Pennsylvania has long established sentencing and parole policies which embrace the principle of truth in sentencing. Summary information concerning Pennsylvania's sentencing statutes is provided in appendix B of this application.

Under Pennsylvania law, any offender who is sentenced to a maximum sentence of two years or more is not eligible for parole until he has completed serving his minimum term. This two year or greater maximum sentence threshold must be met in order for an offender to be sentenced to state prison. Though the Pennsylvania Department of Corrections is authorized to accept some offenders with maximum sentences of less than two years, only 21 of the 6,073 court commitments to state prison in 1995, were sentenced to a maximum of under two years.

The "truth" in Pennsylvania's sentencing structure is that the earliest possible parole date for an offender is established in the court and proclaimed in that public forum. Minimum terms are established either by the use of presumptive sentencing guidelines or through the imposition of mandatory sentences. Pennsylvania's oldest mandatory sentences, for first or second degree murder exemplify this principle. Pennsylvania is one of very few states where the mandatory minimum sentence for each of those offenses, life imprisonment, actually means life imprisonment. The only relief from these life sentences are either an appeal overturning the conviction or a commutation by the Governor. In the last ten years, only 23 lifers have been released from prison by commutation, during that same period 114 died in prison and the Department of Corrections is currently incarcerating more than 3,000 lifers. Other mandatories for violent offenses in Pennsylvania include at least a five year mandatory minimum sentence for any "crime of violence" which is a subsequent violent offense or was committed with a firearm. Pennsylvania's "crime of violence" is a broader definition than the part 1 violent crime definition, most notably, "crime of violence" includes burglary of an occupied residence. In 1995, the Pennsylvania General Assembly held a special session on crime. One of the laws enacted in that session, Act 1995-21, increased the severity of these mandatory sentences under certain circumstances and enabled judges to impose life sentences for third time offenders (Appendix C). This special session also enacted a law, Act 1995-33, that requires that violent juvenile offenders who were previously adjudicated delinquent for a violent crime or who used a deadly weapon in the commission of the current offense be charged in adult court and subject to the same sanctions applicable to adult offenders (Appendix D).

Those violent offenders who are not subject to mandatory sentences in Pennsylvania, are sentenced under our presumptive sentencing guidelines. These guidelines are established in a grid which uses Offense Gravity on one axis and Prior Record on the other. As one would expect, violent offenses dominate the higher offense gravity scores and therefore, are subject to longer minimum sentences than non-violent offenders. The guidelines also include sentence enhancements for the use of a weapon. A set of revised guidelines, now under going a public review process, proposes to further increase the offense gravity scores for violent offenders and

13  

also includes a new prior record category to capture the violent nature of a prior record. This effort is aimed at increasing the severity of sentences of violent offenders not subject to mandatory sentences and bringing them in line with the new mandatories enacted during the special session on crime (Appendix E).

While these efforts are certain to raise the already considerable prison time served by future violent offenders by lengthening the minimum sentence, those violent offenders already in prison are not subject to these new sentencing policies. Since the average minimum sentence and actual time served in prison for these violent offenders is already in excess of four years, we are dealing primarily with offenders sentenced before 1993. However, since parole at minimum is discretionary, parole policies can effect the time served in prison for these offenders. As shown in the data forms provided with this application, the number of violent prisoners released from prison in 1995 was less than half of the number released in 1994, and time served increased by six months. The increase in time served will most likely continue to increase as some of the offenders denied parole at the expiration of minimum are eventually paroled after serving some additional time in prison. This is the result of a new policy adopted by the Pennsylvania Board of Probation of Parole which gives special consideration to offenders convicted of "crimes of violence" and adds a new requirement that at least three of the Board's five members agree to any decision to parole these offenders.

EXHIBIT V

14

## Truth in Sentencing Eligibility

As a state with indeterminate sentencing and guidelines which are used to establish a minimum sentence which determines parole/release eligibility, Pennsylvania should be considered eligible for a Truth in Sentencing grant. As was mentioned in the documentation for the Tier 1 Violent Offender Incarceration Grant, Pennsylvania has a long standing tradition of truth in sentencing, including life sentences. A life prisoner in Pennsylvania can only be paroled if he receives a commutation of that sentence from the Governor. Please refer to the documentation provided in Appendix B.

Pennsylvania has a minimum and maximum sentencing structure. This structure is indeterminate in that once the offender has served his minimum under incarceration, he becomes eligible for parole. However, that parole is discretionary, and under current policy, unlikely to be granted at minimum for **violent** offenders. In BJA's report, **National Assessment of Structured Sentencing**, February 1996, Pennsylvania's sentencing structure is described as indeterminate with a footnote that it is partially determinate. The part that is determinate is the part that guarantees that Part 1 violent offenders sentenced to prison in Pennsylvania will serve at least 100% of their minimum sentence established under guidelines or mandatory statutes.

Whether the minimum sentence is established by the guidelines or mandatory statutes, the court has the authority to establish a sentence based on a range defined in statute. The statutory limit within the law refers to the maximum sentence and the minimum sentence cannot exceed one-half of the maximum sentence. The mandatory minimum sentence laws obviously limit that range by raising the lower limit of the range, however nothing in the mandatory provisions precludes the court from imposing a longer sentence as long as it is within the range allowable for that offense. The guidelines establish a presumptive range for the minimum sentence based on the seriousness of the current offense and the offender's prior record. The guidelines also include alternative presumptive ranges based on either aggravating or mitigating circumstances if the court finds such circumstances exist. The court also has authority to sentence outside of the presumptive ranges provided the reason for the departure are specified. Additionally, there are provisions for sentence enhancements based on the use of a deadly weapon or the distribution of a controlled substance to a juvenile or within 1000 feet of a school.

Once the sentence has been imposed by the court, the parole authority for that offender lies with the a separate administrative agency, the Pennsylvania Board of Probation and Parole. The Board has no authority to release offenders prior to the completion of their minimum sentence. They do however, have absolute release authority at any time between the expiration of the minimum sentence and the expiration of the maximum sentence. The presumptive guidelines used by the court not only set the minimum release date which controls when the Board may consider and offender for parole, but are also used in release consideration. If the minimum sentence imposed is less than the presumptive sentence range, the Board will give careful consideration as to why the court imposed such a sentence and may consider it a negative factor

18 

in the release decision. The majority of the current Board has only been serving for a little over a year and has not yet formalized many of the policy revisions they adopted as part of a major overhaul of Board policy. They are currently involved in a project to formalize much of that policy by developing official decision making guidelines which will rely heavily on sentencing guidelines to further guide decisions within the range of their authority. So not only will the guidelines be used to establish the minimum release date, but will be influential in establishing a release date within the statutorily defined range of the Board's discretion.

The fact that no offender receiving a state prison sentence can be paroled prior to the completion of his or her minimum sentence, is precisely why Pennsylvania has truth in sentencing. The sentence imposed by the court must be served. <u>Pennsylvania has no good time or other provision to allow parole release prior to the expiration of that sentence</u>.

The only exception to the application of sentencing guidelines for Part 1 violent offenders is that some of these offenders are subject to mandatory sentences based primarily on prior record or the use of a firearm in the commission of the offense. However, the requirement that the offender serve his minimum sentence remains and those offenders cannot be paroled prior to expiration of the minimum sentence. Except for the most recently enacted mandatory sentences, the mandatory minimum sentences are within the presumptive range of the guidelines and longer sentences may be imposed under the guidelines. The mandatories do not contradict the guidelines, but in essence have made compliance with guidelines mandatory for certain violent offenses instead of simply establishing presumptive ranges.

The following table shows the number of Part 1 violent offender released from prison for 1993 through 1995 and the average percent of total minimum sentence served by those offenders. The percent of minimum excludes lifers and capital cases in that they are not released, prisoners who have died, or prisoners who have had their sentence and/or conviction overturned on appeal.

### AVERAGE PERCENT OF MINIMUM SENTENCE SERVED FOR PART 1 VIOLENT OFFENDERS RELEASED FROM PA DOC 1993-1995

|  | 1993 | 1994 | 1995 |
|---|---|---|---|
| Number of releases | 1137 | 1069 | 522 |
| Average Percent of Minimum Served | 118.4% | 122.7% | 130.4% |

As part of our effort to monitor Pennsylvania's continuing compliance with truth in sentencing we will provide the above statistics for future years as they become available. However, the percent of minimum sentence served is very likely to increase as the effects of new the parole policies are felt and without a major change in statute, the percent of minimum served cannot fall

19


EXHIBIT V