OMB Approval No. 0348-0043

# APPLICATION FOR FEDERAL ASSISTANCE

| 2. DATE SUBMITTED | Applicant Identifier |
|---|---|
| 2/28/97 | |

| 1. TYPE OF SUBMISSION: | | 3. DATE RECEIVED BY STATE | State Application Identifier |
|---|---|---|---|
| Application | Preapplication | | |
| [X] Construction | [ ] Construction | 4. DATE RECEIVED BY FEDERAL AGENCY | Federal Identifier |
| [ ] Non-Construction | [ ] Non-Construction | | |

**5. APPLICANT INFORMATION**

| Legal Name: Pennsylvania Commission on Crime and Delinquency | Organizational Unit: |
|---|---|
| Address (give city, county, state, and zip code):<br>P.O. Box 1167<br>Harrisburg, PA  17108-1167<br>Dauphin County | Name and telephone number of the person to be contacted on matters involving this application (give area code)<br>Richard D. Reeser<br>(717) 787-8559 |

| 6. EMPLOYER IDENTIFICATION NUMBER (EIN): | 7. TYPE OF APPLICANT: (enter appropriate letter in box)    [A] |
|---|---|
| [redacted] | A. State                H. Independent School Dist.<br>B. County               I. State Controlled Institution of Higher Learning<br>C. Municipal          J. Private University<br>D. Township          K. Indian Tribe<br>E. Interstate          L. Individual<br>F. Intermunicipal  M. Profit Organization<br>G. Special District  N. Other (Specify): _____ |

**8. TYPE OF APPLICATION:**

[X] New    [ ] Continuation    [ ] Revision

If Revision, enter appropriate letter(s) in box(es): [ ] [ ]

A. Increase Award   B. Decrease Award   C. Increase Duration
D. Decrease Duration   Other (specify): _____

**9. NAME OF FEDERAL AGENCY:**

Office of Justice Programs

| 10. CATALOG OF FEDERAL DOMESTIC ASSISTANCE NUMBER: | 1 6 . 5 8 6 | 11. DESCRIPTIVE TITLE OF APPLICANT'S PROJECT: |
|---|---|---|
| TITLE: Violent Offender Incarceration and Truth-In-Sentencing Incentive Grants | | 1) Violent Offender Incarceration and Truth-In-Sentencing Grants<br>2) Department of Agriculture<br>3) July 1 to June 30 |

**12. AREAS AFFECTED BY PROJECT (cities, counties, states, etc.):**

Statewide

| 13. PROPOSED PROJECT: | | 14. CONGRESSIONAL DISTRICTS OF: | |
|---|---|---|---|
| Start Date | Ending Date | a. Applicant | b. Project |
| 10/1/96 | 9/30/2001 | All | All |

| 15. ESTIMATED FUNDING: | | 16. IS APPLICATION SUBJECT TO REVIEW BY STATE EXECUTIVE ORDER 12372 PROCESS? |
|---|---|---|
| a. Federal | $ .00 | a. YES. THIS PREAPPLICATION/APPLICATION WAS MADE AVAILABLE TO THE STATE EXECUTIVE ORDER 12372 PROCESS FOR REVIEW ON: |
| b. Applicant | $ .00 | DATE _____ |
| c. State | $ .00 | b. NO. [X] PROGRAM IS NOT COVERED BY E.O. 12372 |
| d. Local | $ .00 | [ ] OR PROGRAM HAS NOT BEEN SELECTED BY STATE FOR REVIEW |
| e. Other | $ .00 | |
| f. Program Income | $ .00 | 17. IS THE APPLICANT DELINQUENT ON ANY FEDERAL DEBT? |
| g. TOTAL | $ .00 | [ ] Yes    If "Yes," attach an explanation.    [X] No |

**18. TO THE BEST OF MY KNOWLEDGE AND BELIEF, ALL DATA IN THIS APPLICATION/PREAPPLICATION ARE TRUE AND CORRECT. THE DOCUMENT HAS BEEN DULY AUTHORIZED BY THE GOVERNING BODY OF THE APPLICANT AND THE APPLICANT WILL COMPLY WITH THE ATTACHED ASSURANCES IF THE ASSISTANCE IS AWARDED.**

| a. Typed Name of Authorized Representative | b. Title | c. Telephone number |
|---|---|---|
| Richard D. Reeser | Director, Bureau of Program Development | (717) 787-8559 |
| d. Signature of Authorized Representative | | e. Date Signed |
| [signature] | | 2-27-97 |

EXHIBIT W

Previous Editions Not Usable

Standard Form 424 (REV 4-88)
Prescribed by OMB Circular A-102



Office of Justice Programs

---

Office of the Assistant Attorney General

Washington, D.C. 20531
September 30, 1997

The Honorable Linda L. Kelly
United States Attorney
Western District of Pennsylvania
633 U.S.P.O. and Courthouse
Pittsburgh, PA 15219

Dear Ms. Kelly:

I am pleased to inform you that I have approved a supplemental Grant Award to the Pennsylvania Commission on Crime and Delinquency under the Fiscal Year 1997 Violent Offender Incarceration and Truth-in-Sentencing (VOI/TIS) Incentive Grant Program. The amount of this supplemental Award is $14,698,420 based on your State's documentation of meeting yearly increases in Part 1 violent offenders arrested, sentenced to prison, and/or serving longer periods of confinement, and in meeting program requirements that persons convicted of a Part 1 violent crime serve not less than 85% of the sentence imposed. This Award includes funds held in escrow from the FY 1996 VOI/TIS appropriation pending resolution of grantee inquiries regarding eligibility. All such inquiries having been resolved, unused escrow funds are being distributed as part of this funding cycle.

To date, your State has received $27,986,336 (including this Award) through the Violent Offender Incarceration and Truth-in-Sentencing Incentive Grant Program created under Title II, Subtitle A of the Crime Act, as amended.

Richard D. Reeser, Director of the Pennsylvania Commission on Crime and Delinquency, has been designated by the Governor to manage this grant. He can be reached at P.O. Box 1167, Harrisburg, PA 17108-1167 or (717) 787-8559.

We are providing this information to alert you to Federally funded formula grants awarded within your State. If you would like more information, please contact Larry Meachum, Director of the Corrections Program Office, at (800) 848-6325, Ext. 7-3593, or Joyce McGinnis, Grant Manager, at Ext. 5-2402.

Sincerely,

Laurie Robinson
Assistant Attorney General

EXHIBIT W

# Statutory Assurance

# Violent Offender Incarceration Program—Tier 1

The State/Territory of ____Pennsylvania____ assures that it has implemented, or will implement, correctional policies and programs, including Truth-in-Sentencing laws that ensure that violent offenders serve a substantial portion of the sentences imposed, that are designed to provide sufficiently severe punishment for violent offenders, including violent juvenile offenders, and that the prison time served is appropriately related to the determination that the inmate is a violent offender and for a period of time deemed necessary to protect the public.

Richard D. Reeser                                    Director, Bureau of Program Development
**Certifying Official**                              **Title**

_(signature)_                                        2-27-97
**Signature**                                        **Date**

EXHIBIT W

## Attachment to Statutory Assurance-Violent Offender Incarceration Program—Tier 1

Unlike many other states, Pennsylvania has long established sentencing and parole policies which embrace the principle of truth in sentencing.

Under Pennsylvania law, any offender who is sentenced to a maximum sentence of two years or more is not eligible for parole until he has completed serving his minimum term. This two year or greater maximum sentence threshold must be met in order for an offender to be sentenced to state prison. Though the Pennsylvania Department of Corrections is authorized to accept some offenders with maximum sentences of less than two years, only one (1) of the 5,711 court commitments to state prison in 1996, were sentenced to a maximum of under two years.

The "truth" in Pennsylvania's sentencing structure is that the earliest possible parole date for an offender is established in the court and proclaimed in that public forum. Minimum terms are established either by the use of presumptive sentencing guidelines or through the imposition of mandatory sentences. Pennsylvania's oldest mandatory sentences, for first or second degree murder exemplify this principle. Pennsylvania is one of very few states where the mandatory minimum sentence for each of those offenses, life imprisonment, actually means life imprisonment. The only relief from these life sentences are either an appeal overturning the conviction or a commutation by the Governor. In the last ten years, only 21 lifers have been released from prison by commutation, during that same period 133 died in prison and the Department of Corrections is currently incarcerating more than 3,300 lifers. Other mandatories for violent offenses in Pennsylvania include at least a five year mandatory minimum sentence for any "crime of violence" which is a subsequent violent offense or was committed with a firearm. Pennsylvania's "crime of violence" is a broader definition than the part 1 violent crime definition, most notably, "crime of violence" includes burglary of an occupied residence. In 1995, the Pennsylvania General Assembly held a special session on crime. One of the laws enacted in that session, Act 1995-21, increased the severity of these mandatory sentences under certain circumstances and enabled judges to impose life sentences for third time offenders. This special session also enacted a law, Act 1995-33, that requires that violent juvenile offenders who were previously adjudicated delinquent for a violent crime or who used a deadly weapon in the commission of the current offense be charged in adult court and subject to the same sanctions applicable to adult offenders.

Those violent offenders who are not subject to mandatory sentences in Pennsylvania, are sentenced under our presumptive sentencing guidelines. These guidelines are established in a grid which uses Offense Gravity on one axis and Prior Record on the other. As one would expect, violent offenses dominate the higher offense gravity scores and therefore, are subject to longer minimum sentences than non-violent offenders. The guidelines also include sentence enhancements for the use of a weapon. A set of revised guidelines, now under going a public review process, proposes to further increase the offense gravity scores for violent offenders and also includes a new prior record category to capture the violent nature of a prior record. This

9 

effort is aimed at increasing the severity of sentences of violent offenders not subject to mandatory sentences and bringing them in line with the new mandatories enacted during the special session on crime.

While these efforts are certain to raise the already considerable prison time served by future violent offenders by lengthening the minimum sentence, those violent offenders already in prison are not subject to these new sentencing policies. Since the average minimum sentence and actual time served in prison for these violent offenders is already in excess of four years, we are dealing primarily with offenders sentenced before 1994. However, since parole at minimum is discretionary, parole policies can effect the time served in prison for these offenders. The number of violent offenders released from state prison has decreased by 35% since 1994 and the average time served by those offenders released has increased by over three months. This is the result of a new policy adopted by the Pennsylvania Board of Probation of Parole in 1995 which gives special consideration to offenders convicted of "crimes of violence" and adds a new requirement that at least three of the Board's five members agree to any decision to parole these offenders.


EXHIBIT W

## Truth in Sentencing Eligibility

As a state with indeterminate sentencing and guidelines which are used to establish a minimum sentence which determines parole/release eligibility, Pennsylvania continues to be eligible for a Truth in Sentencing grant. Pennsylvania has a long standing tradition of truth in sentencing, including life sentences. A life prisoner in Pennsylvania can only be paroled if he receives a commutation of that sentence from the Governor.

Pennsylvania has a minimum and maximum sentencing structure. This structure is indeterminate in that once the offender has served his minimum under incarceration, he becomes eligible for parole. However, that parole is discretionary, and under current policy, unlikely to be granted at minimum for **violent** offenders. In BJA's report, **National Assessment of Structured Sentencing**, February 1996, Pennsylvania's sentencing structure is described as indeterminate with a footnote that it is partially determinate. The part that is determinate is the part that guarantees that Part 1 violent offenders sentenced to prison in Pennsylvania will serve at least 100% of their minimum sentence established under guidelines or mandatory statutes. Additional descriptive information concerning Pennsylvania's sentencing structure may be found in the October 4, 1996 letter from the Executive Director, Pennsylvania Commission on Sentencing to the Corrections Program Office (Appendix A).

Whether the minimum sentence is established by the guidelines or mandatory statutes, the court has the authority to establish a sentence based on a range defined in statute. The statutory limit within the law refers to the maximum sentence and the minimum sentence cannot exceed one-half of the maximum sentence. The mandatory minimum sentence laws obviously limit that range by raising the lower limit of the range. However, nothing in the mandatory provisions precludes the court from imposing a longer sentence as long as it is within the range allowable for that offense. The guidelines establish a presumptive range for the minimum sentence based on the seriousness of the current offense and the offender's prior record. The guidelines also include alternative presumptive ranges based on either aggravating or mitigating circumstances if the court finds such circumstances exist. The court also has authority to sentence outside of the presumptive ranges provided the reason for the departure are specified. Additionally, there are provisions for sentence enhancements based on the use of a deadly weapon or the distribution of a controlled substance to a juvenile or within 1000 feet of a school.

Once the sentence has been imposed by the court, the parole authority for that offender lies with a separate administrative agency, the Pennsylvania Board of Probation and Parole. The Board has no authority to release offenders prior to the completion of their minimum sentence. They do however, have absolute release authority at any time between the expiration of the minimum sentence and the expiration of the maximum sentence. The presumptive guidelines used by the court not only set the minimum release date which controls when the Board may consider an offender for parole, but are also used in release consideration. If the minimum sentence imposed is less than the presumptive sentence range, the Board will give careful consideration as to why

6

EXHIBIT W

the court imposed such a sentence and may consider it a negative factor in the release decision. As a result of changes in Board membership, the current Board has not yet formalized many of the policy revisions they adopted as part of a major overhaul of Board policy. They are currently involved in a project to formalize much of that policy by developing official decision making guidelines which will rely heavily on sentencing guidelines to further guide decisions within the range of their authority. So not only will the guidelines be used to establish the minimum release date, but will be influential in establishing a release date within the statutorily defined range of the Board's discretion.

The fact that no offender receiving a state prison sentence can be paroled prior to the completion of his or her minimum sentence, is precisely why Pennsylvania has truth in sentencing. The sentence imposed by the court must be served. <u>Pennsylvania has no good time or other provision to allow parole release prior to the expiration of that sentence.</u>

The only exception to the application of sentencing guidelines for Part 1 violent offenders is that some of these offenders are subject to mandatory sentences based primarily on a prior record or the use of a firearm in the commission of the offense. However, the requirement that the offender serve his minimum sentence remains and those offenders cannot be paroled prior to expiration of the minimum sentence. <u>As a result of recent revisions of the sentencing guidelines, the majority of mandatory minimum sentences are within the presumptive range of the guidelines and longer sentences may be imposed under the guidelines.</u> The mandatories have made compliance with guidelines mandatory for certain violent offenses instead of simply establishing presumptive ranges. A summary of the changes in the sentencing guidelines, which took effect on June 13, 1997, is contained in Appendix B.

The following table shows the number of Part 1 violent offenders released from prison for 1994 through 1996 and the total average percent of minimum sentence served by those offenders. The percent of minimum excludes lifers and capital cases in that they are not released, prisoners who have died, or prisoners who have had their sentence and/or conviction overturned on appeal.

AVERAGE PERCENT OF MINIMUM SENTENCE SERVED FOR
PART 1 VIOLENT OFFENDERS RELEASED FROM PA DOC 1994-1996

|  | 1994 | 1995 | 1996 |
| --- | --- | --- | --- |
| Number of releases | 1069 | 522 | 563 |
| Percent of Minimum Served | 113.5% | 122.5% | 125.5% |

As part of our effort to monitor Pennsylvania's continuing compliance with truth in sentencing we will provide the above statistics for future years as they become available. However, the


EXHIBIT W

percent of minimum sentence served is very likely to increase as the effects of new the parole policies are felt and without a major change in statue, the percent of minimum served cannot fall below 100% for any individual violent offender, and therefore the average percentage will always exceed 100%.

8

EXHIBIT W