Exhibits marked as **ATTACHED EXHIBITS A.** which show grants of parole before and after 1996 Parole Amendments. Violent offenders with similar crimes as appellant suffered a disadvantage as appellant did by the retroactive application of parole laws.



# COMMONWEALTH OF PENNSYLVANIA
## BOARD OF PROBATION AND PAROLE
1101 S. Front Street
Harrisburg, Pa. 17104 - 2519

### NOTICE OF BOARD DECISION

NAME: MICHAEL F. MCCOLE
INSTITUTION: SCI - ALBION

PAROLE NO: 8422T
INSTITUTION NO: AS0521

AS RECORDED ON AUGUST 12, 2003 THE BOARD OF PROBATION AND PAROLE RENDERED THE FOLLOWING DECISION IN YOUR CASE:

FOLLOWING AN INTERVIEW WITH YOU AND A REVIEW OF YOUR FILE, AND HAVING CONSIDERED ALL MATTERS REQUIRED PURSUANT TO THE PAROLE ACT OF 1941, AS AMENDED, 61 P.S. § 331.1 ET SEQ., THE BOARD OF PROBATION AND PAROLE, IN THE EXERCISE OF ITS DISCRETION, HAS DETERMINED AT THIS TIME THAT: YOUR BEST INTERESTS DO NOT JUSTIFY OR REQUIRE YOU BEING PAROLED/REPAROLED; AND, THE INTERESTS OF THE COMMONWEALTH WILL BE INJURED IF YOU WERE PAROLED/REPAROLED. THEREFORE, YOU ARE REFUSED PAROLE/REPAROLE AT THIS TIME. THE REASONS FOR THE BOARD'S DECISION INCLUDE THE FOLLOWING:

REPORTS, EVALUATIONS AND ASSESSMENTS CONCERNING YOUR PHYSICAL, MENTAL AND BEHAVIOR CONDITION AND HISTORY.

YOUR INTERVIEW WITH THE HEARING EXAMINER AND/OR BOARD MEMBER.

PREDATORY NATURE OF OFFENSES.

HIGH RISK TO RE-OFFEND.

YOU WILL BE REVIEWED IN OR AFTER JULY, 2008.
AT YOUR NEXT INTERVIEW, THE BOARD WILL REVIEW YOUR FILE AND CONSIDER:

WHETHER YOU HAVE MAINTAINED A FAVORABLE RECOMMENDATION FOR PAROLE FROM THE DEPARTMENT OF CORRECTIONS.

(CONTINUE ON PAGE 2)

CLIENT COPY
MICHAEL F. MCCOLE    AS0521
10745 ROUTE 18
ALBION, PA  16401

16401

EXHIBIT 9

Notice of Board Decision
PBPP 15(08/02) 1 of 2

PAROLE NO: 8422T

(CONTINUED FROM PAGE 1)

WHETHER YOU HAVE MAINTAINED A CLEAR CONDUCT RECORD AND COMPLETED THE DEPARTMENT OF CORRECTIONS' PRESCRIPTIVE PROGRAM(S).

OTHER: EVALUATIONS OF YOUR SEX OFFENSE HISTORY AND PROPENSITY TO RE-OFFEND.

KLD 08/12/2003

EXHIBIT 9

CLIENT COPY
MICHAEL F. MCCOLE    AS0521
10745 ROUTE 18
ALBION, PA 16401

16401

Kathleen Zwierzyna
Board Secretary

Notice of Board Decision
PBPP 15(08/02) 2 of 2

# OVERALL YEARLY PAROLE GRANTS FOR NON-PAROLE VIOLATING VIOLENT OFFENDERS



|  | 1 | 2 |
|---|---|---|
| Series1 | 75% | 24% |
|  | **1990** | **2004** |

Statistics Provided by PA Board of Probation and Parole and PA Department of Corrections

EXHIBIT 10

## Parole Board Statistics 1990-1991

| Violent Offenses | Parole | Refusals | Total | % of Total |
|---|---|---|---|---|
| Homicides/Manslaughter | 370 | 91 | 461 | |
| Assault | 586 | 89 | 675 | |
| Robbery | 882 | 304 | 1,186 | |
| Burglary | 903 | 274 | 1,177 | |
| Arson | 75 | 19 | 94 | |
| Rape | 224 | 64 | 288 | |
| Other Sex Offenses | 159 | 20 | 179 | |
| **Sub Totals** | **3199** | **861** | **4060** | **52.7** |
| Non-Violent Offenses | | | | |
| Drug Law Violations | 1485 | 97 | 1,582 | |
| Theft, RSP | 644 | 153 | 797 | |
| Forgery and Fraud | 235 | 46 | 281 | |
| Driving Under Influence | 300 | 16 | 316 | |
| Other Type Offenses | 580 | 85 | 665 | |
| **Sub Totals** | **3244** | **397** | **3641** | **47.3** |

In comparison to 2005 statistics that shows only 2% of all violent parole plans go to [illegible] another violent offender, parole statistics from 1990-1991 reveal that over 52% of all parole plans were to [illegible] violent offenders.

EXHIBIT 10

...shows the distribution of 7,701 cases actually released to parole supervision during FY 1990-91 by major offense category and major race category. White is defined as Caucasian and English speaking, while non-white includes all other persons. Approximately 31% of the inmates paroled were serving sentences for robbery or burglary.



TABLE 18
INMATES PAROLED AND REPAROLED BY MAJOR OFFENSE CATEGORY AND MAJOR RACE CATEGORY

Table 19 shows the total caseload population by major offense type. As of June, 1991, 31% of the total offender population were on parole for robbery or burglary.

TABLE 19
TOTAL CASELOAD BY OFFENSE TYPE AS OF JUNE 30, 1991

Exhibit 10



## CHAIRMAN'S MESSAGE



**Ben Martinez**
*Acting Chairman*

### Dear Friends,

The watchword for the fiscal years covered by this report is "investment." Although I was a Board Member, not the Acting Chairman, during this time, I witnessed the genesis of a broad-reaching and ambitious initiative that involved every staff member from clerical to management.

At the August 2000 Managers' Training Conference, Board Members and the managers reviewed the Board's overall strengths and weaknesses. In the months before the 2001 Conference, the Board and senior staff worked with that material to form a strategic plan. In July 2001, two important decisions were made: first, to solicit the concerns and ideas from Board staff, through a staff survey; and second, to involve every level of staff in the planning teams that were to be created during the process.

At the July 2001 Conference, managers categorized and analyzed all of the employee suggestions and, from that process, narrowed the focus to specific products or strategies. These core strategies are the major initiatives to be undertaken during the span of the strategic plan, all of which move the Board toward its vision.

### CORE STRATEGIES

A. Use innovative, measurable outcome-based supervision strategies.
B. Engage our communities as partners in supervision.
C. Harness technology to achieve the vision and mission.
D. Create and maintain an agency culture of staff empowerment and mutual respect.
E. Develop the public's understanding and support for our work.

The Vision Statement summarizes the goal of these combined strategies. Our Vision Statement is:

> We maximize public safety through effective decision-making, assisting every offender to become a productive, accountable member of the community.

As we continue to develop this vision into tangible goals and plans, we go forward with the confidence that it is ambitious in scope, but attainable. Our staff has invested its time and best ideas.

I am proud of the work done at the Board of Probation and Parole. The results of our investment are evident. I offer you this report in retrospect so that you can follow our progress. With the help of the new Administration, we will continue to look for better and smarter ways to meet our mission.

Sincerely,

Ben Martinez, *Acting Chairman*

PENNSYLVANIA BOARD OF PROBATION AND PAROLE    BIENNIAL I



Exhibit B

## Mission Statement

The Pennsylvania Board of Probation and Parole is committed to protecting the safety of the public, addressing the needs of crime victims, improving county adult probation and parole services, and assisting in the fair administration of justice by ensuring the custody, control, and treatment of offenders under the jurisdiction of the Board.

## Contents

- Chairman's Message
- 2. About the Board Members
- 4. Establishment of the Board
- 6. Organization Overview
- 8. Organization Chart
- 9. Office of Board Secretary
- 3. Office of Probation and Parole Services
- 21. Office of Management Services
- 17. Office of Legislative Affairs and Communications
- 11. Office of Chief Counsel
- 12. Office of Victim Advocate
- 16. Sexual Offenders Assessment Board
- 3. County Probation and Parole Officers Firearm Education and Training Commission
- 51. Phone Directory

For additional copies of this report, please contact:
Pennsylvania Board of Probation and Parole – Office of Legislative Affairs and Communications
1101 South Front Street, Suite 5100 – Harrisburg, PA 17104-2517 – (717) 787-6205

# 2000-2002 BIENNIAL REPORT

We maximize *public safety* through effective decision-making, assisting every offender to become a productive, accountable member of the community.

EXHIBIT 1/

## PENNSYLVANIA BOARD OF PROBATION AND PAROLE

Tom Ridge, Governor
Mark Schweiker, Governor
William F. Ward, Chairman

Table 6 demonstrates that there were 8,954 inmates considered for parole in FY 1990-91. Approximately 72% of the inmates who were considered, were from state correctional institutions.

### TABLE 6
### INMATES CONSIDERED FOR PAROLE
### BY STATE CORRECTIONAL INSTITUTION FOR
### FISCAL YEAR 1990-91



| Institution | Number | Parole Considerations Percent |
|---|---|---|
| State Correctional Institutions | | |
| (illegible) | | |
| Total Inmates Considered | 8,954 | 100.0 |

Table 7 indicates that within FY 1990-91, 6,890 or 77% of the 8,954 inmates were granted parole by Board action. Of the total considered for parole at minimum sentence date, 79% were granted parole. The group of subsequent reviews refers to cases denied parole at minimum sentence date for specific reasons. Most of these cases are usually reviewed for release within 12 months. The number of inmates granted parole by Board action and the number of inmates actually released to street supervision differ. An inmate granted parole by Board action within a particular month is not necessarily released within the same month. In addition, paroling actions can be rescinded for various reasons, or an inmate can be paroled to serve a detainer sentence.

### TABLE 7
### TOTAL INMATES CONSIDERED FOR
### PAROLE OVER FOUR FISCAL YEARS

| Fiscal Year | Parole Considerations | | | Paroles Granted | | |
| | Minimum | Subsequent Review | Total Considered | Minimum No. % | Subsequent Review No. % | Total Granted No. % |
|---|---|---|---|---|---|---|
| 1987-88 | | | | | | |
| 1988-89 | | | | | | |
| 1989-90 | | | | | | |
| 1990-91 | | | | | 6,890 | 77% |

Exhibit 18

39



OFFICE OF PROBATION AND PAROLE SERVICES

out-patient treatment, consists of up to three months of individual counseling sessions and one group session per week; Phase III, out-patient treatment, consists of three months of less intensive individual and group counseling sessions. The aftercare services reinforce cognitive-behavioral skills essential for individuals to live productive lives.

The program allows for a gradual step down from the strict regimen of the boot camp structure to the offender's return to home and family. There are three regional DOC contracted aftercare facilities and all boot camp graduates experience community re-entry through those facilities and six months of enhanced supervision.

> *Nuisance bars, high drug traffic street corners, and houses are examples of areas targeted for surveillance.*

### Weed and Seed

The Board continued its Weed and Seed program participation with the Pennsylvania State Police (PSP) and local law enforcement agencies. This program is designed to stop illegal activities and remove violent offenders, firearms, and drugs from troubled neighborhoods. Nuisance bars, high drug traffic street corners, and houses are examples of areas targeted for surveillance and increased patrols. Agency staff cooperates with law enforcement agencies through intelligence gathering and the apprehension of parole violators.

### Fugitive Apprehension Search Team

In keeping with the commitment to public safety, the Board enhanced its efforts toward the recovery of absconders (offenders in non-reporting status). Subsequently, it was determined that 48% of the Board's absconder population is assigned to the Philadelphia District's caseload. Approximately 46% of the Philadelphia absconder caseload had been approved to reside in one of the 24 community correction centers or contract facilities throughout the Philadelphia area.

Based on this information, a determination was made in April 2002 to commit staff to the formation of a Fugitive Apprehension Search Team (FAST) in the Philadelphia District. This FAST Unit, comprised of one parole supervisor and four parole agents, is scheduled to begin a one-year pilot project in September 2002. Staff will be assigned responsibility for locating and apprehending the 840 absconders assigned to the Philadelphia caseload. The unit will work in tandem with the six Philadelphia Police Division Intelligence Operations to locate absconders.



Percent Paroled at Minimum and Review



Percent Paroled Violent Offense Classified

Exhibit 19

EXHIBIT 19

ESTABLISHMENT OF THE BOARD



Total Considered and Percent Paroled over Ten Years

The Board is also authorized to supervise offenders sentenced by the courts to imprisonment for less than two years where a request is made by the sentencing court, and to supervise offenders sentenced by other states where a request is made pursuant to the "Interstate Compact for the Supervision of Parolees and Probationers." The recent adoption of new compact legislation permits the National Institute of Corrections and the Council of State Governments to begin the planning process for the first national commission meeting which will establish new compact rules. On June 19, 2002, the 35 states requirement was achieved when Governor Schweiker signed Senate Bill 391 into law, Act 56 of 2002.

The Board has the authority to revoke parole and return an individual to prison. Hearing procedures have been established to ensure that the parolee is provided adequate due process rights consistent with the decisions of the United States Supreme Court and the appellate courts of Pennsylvania.

## Continuum of Service

The criminal justice system plays a vital role in protecting the safety of our communities. Public safety is achieved through a continuum of service. When someone has broken the law, the offender is arrested, prosecuted, adjudicated, and sentenced to an appropriate sanction, which can include incarceration and/or probation or parole. In order for this continuum to function smoothly, it is necessary for all components of the system to work cooperatively. This includes law enforcement, the courts, correctional facilities, and probation and parole.

The Board of Probation and Parole evaluates state offenders' suitability for release to parole supervision. If approved for parole, the Board also provides supervision services in the community. The Board must balance the demands of protecting the safety of the public while facilitating the offender's reintegration into the community. Additionally, the Board strives to promote cooperation with its fellow community corrections organizations and encourages development of new strategies for the delivery of services.

*The Board strives to promote cooperation with its fellow community corrections organizations.*

Exhibit 2C



In 1990 52% of All Yearly Parole Grants Went to Violent Offenders



By 2004, All Yearly Parole Grants Dropped to 50%



EXHIBIT 21



EXHIBIT